EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* RAMÓN CABRERA HERNÁNDEZ Y FRANCISCO RINCÓN PLUMEY, acusados y apelantes.

Nos. 2498 y 2510.—*Vistos:* Mayo 22, 1925. *Resueltos:* Julio 10, 1925.

1. MÉDICOS Y CIRUJANOS—EJERCICIO DE LA MEDICINA—EJERCICIO AUTORIZADO POR LA LEY.—La excepción establecida por el artículo 3 de la Ley de 1903, según se enmendó en 1911 (Comp. 1713), sólo tiene aplicación a aquellas personas que sin tener un diploma facultativo asumieron la posición de un verdadero médico en la comunidad, fueron reconocidos en ella como doctores y estuvieron en abierto ejercicio de la profesión por espacio de cinco años con anterioridad al 1911 como si hubieran tenido un diploma.

2. MÉDICOS Y CIRUJANOS—EJERCICIO DE LA MEDICINA—EJERCICIO AUTORIZADO POR LA LEY—PRUEBA NECESARIA.—Para demostrar que se está comprendido dentro de la excepción establecida por la ley (Comp. 1713), la prueba debe ser amplia y convincente.

SENTENCIA de *Pablo Berga*, J. (Humacao), condenando a los acusados por delito de ejercicio ilegal de la medicina. *Confirmadas.*

L. *Muñoz Morales* y R. *Martínez Nadal* abogados de los apelantes; *José E. Figueras*, abogado de *El Pueblo*, apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Estos recursos se vieron conjuntamente y de igual modo serán estudiados en una sola opinión.

Se denunció a Ramón Cabrera Hernández y a Francisco Rincón Plumey por ejercicio ilegal de la medicina, el pri-

mero en Caguas, en diciembre de 1924, y el segundo en San Lorenzo, en noviembre y diciembre del propio año, ambas municipalidades pertenecientes al distrito judicial de Humacao. Celebrados los juicios, la corte declaró culpables a los acusados de infringir la sec. 9 de la Ley No. 73, aprobada el 30 de julio de 1923 (p. 551), tal como fué enmendada por Ley No. 15, aprobada el 1 de julio de 1924 (p. 125), e impuso a cada uno una multa de cincuenta dólares y en defecto de pago un día de cárcel por cada dólar dejado de satisfacer. No conformes Cabrera y Rincón apelaron para ante esta Corte Suprema, señalando y discutiendo ampliamente por escrito y oralmente los dos siguientes errores:

1. La corte cometió error al sostener que los acusados están ejerciendo ilegalmente la medicina, y

2. La corte cometió error al sostener que no es aplicable a estos casos la doctrina sentada por el Tribunal Supremo en el de *El Pueblo* v. *Rodríguez Alberty,* de dic. 19, 1924, (33 D.P.R.).

No hay cuestión con respecto a la prueba de los hechos imputados en las denuncias. Es evidente que los acusados en los sitios y fechas indicados en las mismas, recetaron a pacientes cobrando por sus recetas y haciéndose pasar por médicos, y es evidente también que los acusados no tienen título de Universidad o Escuela de Medicina, ni están autorizados por la Junta de Médicos Examinadores de Puerto Rico para ejercer la medicina en la Isla, pero los acusados sostienen que ellos no actuaron ilegalmente, sino autorizados por la ley.

Obsérvase en cuanto se leen las denuncias y se estudia la prueba y se analiza la cuestión legal suscitada, que estos dos casos son la consecuencia directa de la decisión de esta Corte Suprema en el citado caso de *El Pueblo* v. *Rodríguez Alberty.* Seguramente existen más en espera de esta segunda decisión, y siendo ello así es el deber nuestro aclarar en cuanto fuere posible una situación de verdadera importancia para toda la comunidad.

El precepto de ley de cuya infracción se declaró culpables a los acusados, lee como sigue:

"Sección 9.—Toda persona que fuere denunciada y convicta de ejercer ilegalmente la medicina o cirugía, la osteopatía, o cualesquiera ramos de éstas o de sus profesiones auxiliares, o la obstetricia, contraviniendo a las disposiciones de esta Ley, por cada infracción incurrirá en un delito de *misdemeanor* y será castigada con una multa que no excederá de doscientos dólares o prisión en la cárcel por un término que no exceda de noventa días o ambas penas a discreción del tribunal; *Disponiéndose,* que en caso de reincidentes el delito aparejará necesariamente pena de cárcel. Para los efectos de esta Ley se considerará como ejerciendo ilegalmente la medicina y cirugía, la osteopatía o cualquiera de las ramas de estas profesiones, o la obstetricia, o cualquiera de las profesiones auxiliares de la medicina y cirugía, a toda persona que, sin estar legalmente autorizada, añadiere a su nombre las letras M. D. (Doctor en Medicina), se anunciare o se hiciese pasar como médico, cirujano, osteópata, optómetra, practicante, comadrona, enfermera o enfermero, prestare servicios como tales, e interviniere en el tratamiento de enfermedades o defectos físicos, recibiere o nó remuneración por tales servicios."

Las leyes anteriores fueron analizadas en la repetida decisión de *El Pueblo* v. *Rodríguez Alberty* y nada tenemos que añadir. Tampoco estamos convencidos de que debamos modificar el criterio sustentado por la mayoría del tribunal en dicha decisión en el sentido de que fué la intención del legislador puertorriqueño autorizar como autorizó a continuar ejerciendo la medicina en Puerto Rico a toda persona que de hecho la hubiere ejercido por un período de cinco años con anterioridad al 9 de marzo de 1911, tuviera o nó título académico, hubiera estado o nó autorizada para ello por la Junta de Médicos Examinadores. La Legislatura reconoció y garantizó una situación de hecho y la Legislatura no obstante haber sido su intención de tal modo interpretada por la mayoría de los jueces de esta corte, teniendo facultades y oportunidad para variar la Ley, nada ha hecho, pudiendo considerarse su silencio en el sentido de que su intención fué debida y fielmente interpretada.

Siendo ello así, debe formularse en estos casos la siguiente pregunta: ¿Probaron los acusados que ejercieron la Medicina en Puerto Rico por espacio de cinco años con anterioridad al 9 de marzo de 1911?

La contestación envuelve la fijación del concepto "ejercer la medicina" y el análisis de la prueba.

A nuestro juicio la situación de hecho reconocida por el Legislador, fué la de un verdadero status de médico en el seno de la sociedad. "Médico," según el Diccionario de la Academia Española, es "el que se halla legalmente autorizado para profesar y ejercer la medicina," y "Medicina", según la misma autoridad, es la "ciencia y arte de precaver y curar las enfermedades del cuerpo humano y en especial las internas."

Desde 1804 los médicos en todo el territorio español, peninsular e insular, se dividían en médicos cirujanos, profesores de ciencias médicas, médicos puros y cirujanos. Estos últimos se subdividían en cirujanos de primera clase, que eran los llamados cirujano-médicos, cirujanos latinos, licenciados y doctores en cirugía médica; en cirujanos de segunda clase, en cuyo número entraban los llamados de colegio y los antiguos romancistas; en cirujanos de tercera clase, o sean cirujanos sangradores, y en cirujanos de cuarta clase, que eran todos los demás profesores puramente prácticos. También existían los prácticos del arte de curar del plan de 1843 y los médicos de segunda clase del Real Decreto de diciembre de 1849, que estudiaron los principios elementales de la medicina y cirugía y destinaron algún tiémpo a la práctica de ellas, cuyas enseñanzas fueron abolidas sucesivamente. Además se conocían con el nombre de *ministrantes* anteriores a la ley de 1857, y el de *practicantes* creados por ésta, unos auxiliares subalternos, que no siendo facultativos no estaban comprendidos en las clases de cirujanos existentes, pero que sin embargo habiendo estudiado y sufrido exámenes, obtenían un título que les concedía ciertos derechos, aunque en limitada esfera. La citada ley de

1857 creó una clase de médicos llamados médico-cirujanos habilitados, análoga a la de los prácticos de 1843.   Otras leyes se dictaron hasta que por la de 25 de octubre de 1868, salvo los derechos adquiridos al amparo de leyes anteriores, sólo se reconoció por facultativos de la ciencia de curar a los *doctores* o *licenciados* de ambas ciencias—medicina y cirugía—, los cuales tenían de auxiliares a los *practicantes* a los efectos de administrar los medicamentos por ellos prescritos.   La carrera de médico-cirujano se estudiaba con sujeción a un plan aprobado por el legislador en las universidades que eran instituciones del Estado.   Véase Alcubilla. Diccionario de la Administración Española, tomo 7, pág. 220 y siguientes de la cuarta edición.

Tal era a grandes rasgos la situación legal en Puerto Rico sobre la materia al ocurrir el cambio de la soberanía. Un médico-cirujano en Puerto Rico era conocido generalmente como doctor, aunque su título fuera el de licenciado y se presuponían sus estudios académicos.   No sólo procedían de España.   Muchos cursaron sus carreras en Francia, Bélgica y Estados Unidos y fueron autorizados para ejercer por el gobierno español.

La tendencia de los pueblos a medida que progresan, es la de regular el ejercicio de las profesiones exigiendo cada vez más, de manera que los profesionales estén al día en el avance de su ciencia o arte y así puedan prestar a la comunidad sus servicios con la mayor seguridad de acierto.

Ocurrido el cambio de soberanía y organizado el gobierno civil de la Isla, se aprobó la ley de 12 de marzo de 1903 (Comp. 1711), que organizó la Junta de Médicos Examinadores.   Leyendo en conjunto sus disposiciones se observa el propósito firme del Legislador de autorizar solamente a ejercer en la Isla como médico-cirujanos a aquellos que hubieren estudiado en colegios y universidades bien reputados y que sufrieran además examen.

¿Qué motivó el *disponiéndose* que se consignó en la enmienda a la sección 3 de la ley de 1903, hecha en 1911 (Comp.

1713) y que fué objeto de interpretación en *El Pueblo* v. *Rodríguez Alberty, supra?*

Diferentes causas se expusieron en el informe oral de estos recursos. Alguna necesariamente tuvo que existir. Quizá al Legislador constaba que había en la Isla ejerciendo la medicina cierta o ciertas personas que siendo perfectamente capacitadas para ello carecían de alguno o algunos de los requisitos académicos exigidos por la ley y quiso legalizar su situación. Siendo ello así sólo puede pensarse que estuvieron en la mente del legislador personas que en la comunidad asumían la posición de un médico, reconocidas en ella como *doctores,* desempeñando puestos públicos como tales, considerados como iguales por sus compañeros de profesión, en una palabra verdaderos médicos en abierto ejercicio de su profesión. Un farmacéutico, un practicante, un cirujano menor, un curandero, no puede pensarse que fueran los médico-cirujanos de hecho que dieron motivo al *disponiéndose.*

Tal fué el caso, según la apreciación que hicimos de la prueba, del doctor Rodríguez Alberty, quien llegó a desempeñar en la comunidad en que vivía cargos públicos que sólo se encomendaban a médico-cirujanos, que como perito médico fué llamado a declarar por el Fiscal del Distrito, y como médico asistió a consultas con sus compañeros de profesión.

Hemos examinado la prueba en estos dos casos de Cabrera y de Rincón y no nos convence de que ellos actuaron como médico-cirujanos abierta y constantemente en el seno de la sociedad durante cinco años anteriores al 1911.

Toda la prueba es testifical. Ni una sola de las recetas que se dicen expedidas fué aportada. Ni un solo registro de esas recetas en los libros de las farmacias en donde se dice que fueron despachadas fué presentado. Ningún colega profesional compareció ante la corte a declarar que los acusados actuaron como médico-cirujanos. No se introdujo documento público alguno otorgado en el período de los

cinco años anteriores al 1911 en donde directa o indirecta-
mente constara que la profesión de los acusados era la de
médico-cirujano.  Los acusados pudieron furtivamente rece-
tar, curar, quizá tenían y tienen conocimientos bastantes,
quizá en momentos anormales la sociedad se valió de esos
conocimientos, pero no surge claro y robusto como es menes-
ter de la prueba aportada el hecho de que practicaron la
profesión de medicina y cirugía en la forma que al inter-
pretar la ley hemos establecido, durante el período por la
misma ley fijado.  La prueba en casos de esta naturaleza
debe ser amplia y convincente.  Cinco años de ejercicio cons-
tante de la profesión de médico-cirujano, tienen necesaria-
mente que dejar un rastro tal de hechos y documentos que
sería sumamente fácil aportar la prueba requerida.  Lo que
la prueba demuestra de modo convincente aquí es que los
dos acusados son dos farmacéuticos inteligentes y diestros
que de cuando en cuando se han salido del radio de su pro-
fesión y han penetrado en el campo de la medicina.  Eso es
todo y para esos casos no estableció la excepción el legis-
lador.

*Deben confirmarse las sentencias recurridas.*

El Juez Asociado Señor Aldrey firmó conforme con la
sentencia pero no con sus fundamentos.