El Pueblo de Puerto Rico, demandante y apelado, *v.* Agustín Rosa Quiñones, acusado y apelante

No. 2817.—*Visto:* Junio 18, 1926.   *Resuelto:* Febrero 15, 1927.

1. Médicos y Cirujanos—Ejercicio Ilegal de la Medicina—Ejercicio Autorizado por la Ley.—La excepción establecida por el disponiéndose del artículo 3 de la Ley No. 79 de 1911 (p. 260, Comp. 1713) como fué enmendada por la No. 43 de 1919 (p. 196) se limita a los médicos cirujanos que tienen un diploma facultativo, que por su reputación y experiencia han sido considerados como tales por sus colegas de profesión y por el público en general.

2. Médicos y Cirujanos—Ejercicio Ilegal de la Medicina—Ejercicio Autorizado por la Ley—Prueba Necesaria.—Aquél que invoque estar investido de un diploma de médico cirujano y alegue estar dentro de la excepción establecida por el disponiéndose establecido en el artículo 3 de la Ley 79 de 1911 como fué enmendada por la. No. 43 de 1919 (p. 196) debe demostrar, definiéndola, con prueba robusta y convincente—un conjunto de circunstancias y no hechos aislados—su condición de tal médico cirujano mediante la experiencia o ejercicio por cinco años con anterioridad al 1919.

Sentencia de *Domingo Sepúlveda,* J. (San Juan), condenando al acusado por infracción a la sección 9 de la Ley 73 de 1923, según fué enmendada por la No. 15 de 1924. *Confirmada.*

*Luis Llorens,* abogado del apelante; *José E. Figueras,* abogado de *El Pueblo,* apelado.

EL JUEZ ASOCIADO SEÑOR FRANCO SOTO, emitió la opinión del tribunal.

Esta es una apelación de una sentencia que impuso al acusado una multa de veinticinco dólares por ejercer ilegalmente la profesión de médico-cirujano.

La corte inferior, refiriéndose a la prueba dice:

"Al empezar la vista del caso, el Fiscal y la defensa hicieron la siguiente estipulación que consta en el récord:

" 'La defensa acepta que el acusado Dr. Rosa Quiñones expidió las recetas que se ofrecen como prueba por el Fiscal sin estar autorizado a ejercer la profesión de médico por el Board de Médicos Examinadores de Puerto Rico, o sea sin licencia del expresado Board, ni estar inscrito en el Registro de Médicos Cirujanos del Departamento de Sanidad.

" 'El Fiscal acepta que tiene un diploma o título universitario de Doctor en Medicina expedido por la Universidad del Estado de Illinois, el cual título se presenta como prueba y acepta también que el acusado viene desde hace más de seis años practicando como médico en Puerto Rico, y recibiendo compensación y honorarios como tal médico y usando las iniciales M. D. en sus recetas, todo ello amparado en dicho título o diploma.

" 'La defensa acepta que en 21 de junio de 1925 en el poblado Palo Seco de Toa Baja, el acusado practicaba como médico en la forma anteriormente expresada y que con anterioridad a dicha fecha de la denuncia, estuvo practicando como tal médico y en las mismas condiciones por espacio de más de seis años, lo cual admite el Fiscal.

" 'En adición a la estipulación, se ofrecen como prueba dos recetas por el Fiscal que están anexas al expediente.

" 'La defensa presenta como prueba el Diploma o título a que se refiere la estipulación, el cual aparece expedido por la Universidad de Medicina del Estado de Illinois, en 28 de mayo del año 1914, cuya prueba admite el Fiscal.

" 'Y la Corte aprobó dicha estipulación.'

"En Octubre 24 de 1925, compareció el acusado en Corte abierta y amplió su declaración ya prestada en esta forma:

" 'Que él está ejerciendo como Médico en Puerto Rico, desde la primera quincena del mes de Junio de 1914; que ha ejercido desde entonces continuamente en Puerto Rico; que no ha desempeñado cargos públicos como Médico; que ha trabajado en el bufete del Dr.

Coll y Cuchí; que es ésta la primera vez que lo han denunciado mientras está ejerciendo la profesión de Médico.'

\*      \*      \*      \*      \*      \*      \*

"De los hechos probados, aparece que el acusado Sr. Rosa Quiñones obtuvo un título de Médico en el mes de Mayo de 1914 y desde esta fecha comenzó a ejercer su profesión, curando enfermos, despachando recetas firmadas con el título de Médico Cirujano, teniendo un rótulo con tal título de Médico Cirujano, expuesto al público frente a su oficina, y practicando en fin, todas las demás actuaciones propias del ejercicio de dicha profesión. Estos son los hechos probados."

Después la corte estudia la jurisprudencia de esta Corte Suprema en los casos de *El Pueblo v. Rodríguez Alberty,* 33 D.P.R. 850, y *El Pueblo v. Cabrera y Rincón,* 34 D.P.R. 470, y concluye así:

"Entendemos que la doctrina en el caso de Rodríguez Alberty no es aplicable en ninguna forma al caso de Agustín Rosa Quiñones que ahora estamos resolviendo, y llegamos a la conclusión de que Agustín Rosa Quiñones, a pesar de ostentar un título de médico expedido por la Universidad del Estado de Illinois, no se halla comprendido para los efectos de la Ley, dentro de los Médicos debidamente autorizados que hubieran ejercido en Puerto Rico por un período de 5 años con anterioridad a la aprobación de la Ley No. 43 aprobada en 7 de junio de 1919."

No se ha elevado una exposición del caso o transcripción de la evidencia, pero el apelante alega que no ha sido necesario hacer una u otra cosa porque el recurso no se basa en ningún error cometido durante el juicio ni en una errónea apreciación de la prueba, sino en que no habiendo controversia en los hechos en virtud de la estipulación acordada, el fundamento consiste en un error en la interpretación de la ley aplicable a tales hechos.

[1, 2] Asumiendo que pudiéramos prescindir de la exposición del caso o trascripción de la evidencia, nos parece, sin embargo, que las admisiones contenidas en la estipulación no es la prueba robusta y convincente para dejar determinado el *standard* del acusado en su condición de mé-

dico-cirujano, según quedó definido en el caso de *El Pueblo* v. *Cabrera y Rincón, supra,* diciéndose que "la situación de hecho reconocida por el legislador fué la de un verdadero status de médico en el seno de la sociedad." Y penetrando luego en su intención al referirse a la enmienda que se hizo en la sección 3 de la ley de 1903 en 1911, esta corte dijo además:

"Diferentes causas se expusieron en el informe oral de estos recursos. Alguna necesariamente tuvo que existir. Quizá al Legislador constaba que había en la Isla ejerciendo la medicina cierta o ciertas personas que siendo perfectamente capacitadas para ello carecían de alguno o algunos de los requisitos académicos exigidos por la ley y quiso legalizar su situación. Siendo ello así sólo puede pensarse que estuvieron en la mente del legislador personas que en la comunidad asumían la posición de un médico, reconocidas en ella como *doctores,* desempeñando puestos públicos como tales, considerados como iguales por sus compañeros de profesión, en una palabra verdaderos médicos en abierto ejercicio de su profesión. Un farmacéutico, un practicante, un cirujano menor, un curandero, no puede pensarse que fueran los médicos-cirujanos de hecho que dieron motivo al *disponiéndose.*"

Lo mismo la Ley No. 79 aprobada en marzo 9, 1911 (Comp. 1713), como su enmienda por la Ley No. 43 de junio 7, 1919 (p. 196), tuvieron el mismo objeto para todas las personas, según la primera ley, y para "todos los médicos debidamente autorizados," según dispone la segunda, en sentido de que si no se demostraba la competencia y habilidad mediante un examen de reválida ante una junta de médicos examinadores, la legislatura al permitir las excepciones a la regla general procedió sin duda bajo la teoría de exigir el requisito de la experiencia del que se dedica al ejercicio de la profesión médica por un período de cinco años. La sabiduría o las circunstancias que de momento pueden justificar una legislación de tal naturaleza entra dentro del radio de acción de las legislaturas, pero las cortes una vez llamadas a intervenir, a ellas es a quienes corresponde pesar y medir el alcance de la evidencia en tales

casos. De todos modos nuestra legislatura en la ley de
1919 creyó más prudente exigir algo más de lo prescrito
por la de 1911 para los casos de excepción y modificó enton-
ces la fraseología de la ley requiriendo un título universi-
tario o diploma de una escuela de medicina que fué lo que
quiso significar al referirse el *disponiéndose* de la sección 3
de la ley de 1919 ''a todos los médicos debidamente autori-
zados,'' consistiendo en esto la enmienda.

Los centros de enseñanza al expedir un título o diploma
declaran por ellos a la persona que lo obtiene que ha adqui-
rido un caudal de conocimientos en el ramo del saber que
ha elegido, pero la presunción de suficiencia que da el tí-
tulo depende en mucho de la vocación o disposición de aque-
lla persona y del crédito o reputación de la universidad o
escuela en donde lo haya ganado. La Legislatura segura-
mente por tales razones quiso que se uniera a la presunción
de capacidad que representa un diploma de médico-cirujano,
la experiencia de la práctica por cinco años a todos aque-
llos médicos que han rehusado o temido demostrar la sufi-
ciencia de sus conocimientos en las distintas materias que
comprende la medicina, ante una junta examinadora de mé-
dicos, creada expresamente para ese fin. El propósito de
la ley es de protección contra los riesgos de la impericia en
una profesión de tan vital importancia en la vida de rela-
ción, limitando el *disponiéndose* de la sección 3 a los médi-
cos-cirujanos que por su reputación y experiencia han sido
considerados como tales por sus colegas de profesión y por
el público en general. El mero hecho de expedir recetas
no demuestra por sí solo la capacidad del acusado, pues
existen *ad hoc* formularios prácticos de terapéutica y far-
macopea que casuísticamente pueden copiarse. Debemos,
por tanto, darle un efecto a la ley que responda a su objeto.
Todo depende de un conjunto de circunstancias, y hechos
aislados carecen de importancia. En tiempos como los ac-
tuales en que la clase médica es numerosa y su crédito está

al nivel de lo que exige la ciencia y su ejercicio está reglamentado para asegurar en lo posible la competencia, es razonable exigir de una persona, que invoca estar investida de un diploma de médico-cirujano pero que duda de su capacidad no sometiéndose a un examen de reválida, la demostración fuerte y robusta de haber definido claramente su condición de tal mediante la experiencia o ejercicio por cinco años, lo cual no aparece de este caso.

*Por todo lo expuesto, debe confirmarse la sentencia apelada.*

El Juez Presidente Señor del Toro no intervino, y el Juez Asociado Señor Aldrey firmó: "conforme con la sentencia."