El Pueblo de Puerto Rico, demandante y apelado, *v.* Rafael Ibarra Felicci, acusado y apelante.

Núm. 13219.—*Sometido:* Noviembre 9, 1948. *Resuelto:* Febrero 14, 1949.

564

*Córdova & González*, abogados del apelante; *Hon. Procurador General Vicente Géigel Polanco (Luis Negrón Fernández, Ex Procurador General*, en el alegato) y *Guillermo A. Gil, Fiscal Especial General*, abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR TODD, JR., emitió la opinión del tribunal.

En el año 1929, Rafael Ibarra Felicci fué declarado culpable y sentenciado en trece casos, vistos en apelación por la Corte de Distrito de Humacao, todos por el delito de ejercer ilegalmente la medicina. En el año 1941 fué denunciado por el mismo delito ante la Corte Municipal de Ciales y, celebrado el juicio correspondiente, fué absuelto. En el año 1946, el fiscal de la Corte de Distrito de Bayamón formuló denuncia ante la Corte Municipal de Río Piedras, contra Rafael Ibarra Felicci por el mismo delito, en grado de reincidencia, consistente ésta en las convicciones del año 1929, y en grado apelativo fué declarado culpable y sentenciado por la Corte de Distrito de Bayamón a cumplir treinta días de cárcel. No conforme con la sentencia apeló y en este recurso alega que la corte inferior erró (1) al no resolver que El Pueblo estaba *collaterally estopped* de alegar o pretender probar que el acusado no estaba autorizado para ejercer la medicina en Puerto Rico y (2) al declarar al acusado reincidente del delito que se le imputa en la denuncia.

■ Ya hemos resuelto que "A los fines del *estoppel* colateral, las sentencias en causas criminales tienen el mismo efecto que en los casos civiles, a saber, que son concluyentes sólo en cuanto a aquellas materias que de hecho se suscitaron y verdaderamente o por necesidad se adjudicaron por ellas." *Pueblo* v. *Lugo*, 64 D.P.R. 554, sumario 5. Y al mismo efecto, *Pueblo* v. *De Jesús*, 65 D.P.R. 927 y *Pueblo* v. *Rosa Quiñones*, ante, pág. 470.

■ Sin embargo, no tenemos que resolver cuál de las dos sentencias debe prevalecer, si la condenatoria de Humacao

o la absolutoria de Ciales, porque en este último proceso, aun cuando el acusado fué absuelto, no se litigó idéntica cuestión de hecho, al amparo de la legislación vigente en el año 1941, a aquélla que se litigó en Humacao bajo la legislación vigente en 1929. Es cierto que en ambos procesos se acusó al apelante de ejercer ilegalmente la medicina en Puerto Rico. Empero, en el año 1941, cuando fué procesado en Ciales y la corte lo absolvió lo hizo bajo la errónea aplicación del *disponiéndose* de la sección 3 de la ley núm. 43 aprobada el 7 de junio de 1919 (pág. 195), el cual, en lo pertinente, dispone: " ... que todos los médicos debidamente autorizados que hubieren ejercido en Puerto Rico por un período de cinco años con anterioridad a la aprobación de la presente Ley, podrán continuar en el ejercicio de la profesión sin que en nada les afecten las anteriores disposiciones," que ya no tenía fuerza legal por mandato expreso de nuestra Asamblea Legislativa.

▪▪▪ Desde el año 1903 hasta el año 1931 nuestra Asamblea Legislativa aprobó una serie de leyes que puntualizaron claramente cuál fué su intención al aprobar cada una de ellas en relación con los requisitos exigidos para el ejercicio de la medicina en Puerto Rico. Veámoslas.

Por la sección 3 de la Ley efectiva el 12 de marzo de 1903 (pág. 124) se exigió que toda persona que en lo sucesivo deseara ejercer la medicina o la cirugía, o cualquiera de sus ramos, o la obstetricia, en la isla tenía que solicitar una licencia de la Junta de Médicos Examinadores, acompañada la solicitud de comprobantes, aprobados por la Junta, de haberse graduado el solicitante de un colegio o institución, bien acreditado y organizado legalmente, y si resultaba auténtico el diploma, circunstancia a determinar por la Junta, dicho solicitante tenía que someterse a un examen y si el candidato resultaba apto la Junta le expedía un certificado habilitándolo para ejercer la medicina y cirugía en Puerto Rico. Esta sección 3 terminaba con el siguiente

*disponiéndose*: " . . .que todos los médicos y cirujanos, que posean certificados expedidos por la actual Junta de Médicos Examinadores quedarán exentos de las disposiciones de este artículo."

Por la Ley aprobada el 9 de marzo de 1911 (pág. 260) se enmendó el *disponiéndose* de la sección 3, supra, diciéndose:

". . . *Disponiéndose, sin embargo,* que todos los médicos, médicos osteópatas y cirujanos, que posean certificados expedidos por la actual Junta de Médicos Examinadores quedarán exentos de las disposiciones de esta regla; y que todos los que hubieren ejercido en Puerto Rico cualquiera de estas profesiones *por un período de cinco años con anterioridad a la aprobación de la presente Ley, podrán continuar en el ejercicio de la misma, sin que en nada les afecten las anteriores disposiciones."* (Segundas bastardillas nuestras.)

De nuevo en el año 1919, por la Ley núm. 43 aprobada el 7 de junio de dicho año (pág. 195), se enmendó el disponiéndose de la sección 3, supra, para leer como sigue: ". . .que todos los médicos *debidamente autorizados* que hubieren ejercido en Puerto Rico por un período de cinco años con anterioridad a la aprobación de la presente Ley, podrán continuar en el ejercicio de la profesión sin que en nada les afecten las anteriores disposiciones." (Bastardillas nuestras.)

Las enmiendas hechas al *disponiéndose* consisten en aquella parte que hemos puesto en bastardillas.

Por la Ley núm. 73 aprobada el 30 de julio de 1923 ((1) pág. 549), se derogaron todas las leyes anteriores que en alguna forma se opusieran a ella y se estableció una nueva Junta de Médicos Examinadores y reguló de nuevo el ejercicio de la profesión médica. Es de notarse que ni esta ley ni la núm. 15, aprobada el 1 de julio de 1924 (pág. 123) que la enmendó, hizo referencia, ni contenía cláusula de reserva alguna (*saving clause*) en cuanto a las personas para cuyo beneficio se aprobó el *disponiéndose* de las leyes de 1911 y 1919, supra.

Es más, por disposición legislativa, la sección 3 de la Ley aprobada el 12 de marzo de 1903 tal y como quedó enmendada por la Ley del 9 de marzo de 1911, fué expresamente derogada por la Ley núm. 45 aprobada el 13 de mayo de 1927 (pág. 247).

Por la Ley núm. 20 aprobada el 19 de abril de 1928 (pág. 155), se reenactó la sección 14 de la Ley núm. 73 aprobada el 30 de julio de 1923, según enmendada posteriormente, pero esta ley no revivió el disponiéndose antes mencionado.

Por último, la Ley núm. 22 aprobada el 22 de abril de 1931 (pág. 205), para regular el ejercicio de la profesión médica en P. R., etc., en su sección 14, dispone en lo pertinente, que:

". . . *Y disponiéndose, además,* que en lo sucesivo sólo podrán ejercer la profesión médica en Puerto Rico las siguientes personas: 1. Los que obtuvieren licencias de la Junta Superior de Sanidad, desde su fundación hasta el año 1901 y que aparezcan sus nombres en los registros correspondientes. 2. Los que obtuvieren asimismo, licencias de la Junta Superior de Sanidad y cuyos nombres no aparezcan en dichos registros, pero que presenten sus licencias al Tribunal Examinador de Médicos para su registro en el *record* del Tribunal. 3. Los que tengan licencias expedidas por el Tribunal desde el año 1903 en adelante y estén inscritos en los registros del Departamento de Sanidad de Puerto Rico. 4. *Los que por sentencia del Tribunal Supremo de Puerto Rico tengan derecho reconocido para ejercer la medicina y cirugía en Puerto Rico a virtud de legislación anterior; Disponiéndose, asimismo,* que los así autorizados para ejercer deberán presentar al Tribunal la documentación acreditiva (sic) de tal reconocimiento, para su registro correspondiente; . . ." (Terceras bastardillas nuestras.)

Es obvio que el apelante nunca ha sostenido en el pasado, ni sostiene ahora, que su caso pueda estar cubierto por los tres primeros apartados de este *disponiéndose.* Tampoco lo está por el cuarto, ya que este Tribunal Supremo nunca le ha reconocido por sentencia el derecho a ejercer la medicina y cirugía a virtud de legislación ante-

rior y tampoco él ha presentado al Tribunal Examinador de Médicos documentación alguna acreditativa de tal reconocimiento para su registro.

Esta legislación demuestra que, aun haciendo caso omiso de la Ley de 1927 que derogó expresamente la sección 3 de la Ley de 1903, según enmendada por la de 1911, supra, desde el año 1931, y de acuerdo con el apartado 4 del *disponiéndose* del artículo 14, Ley núm. 22, supra, no podían continuar ejerciendo la medicina en Puerto Rico aquellas personas que lo estaban haciendo por el fíat legislativo contenido en las leyes de 1911 y de 1919, a menos que este Tribunal Supremo por sentencia les hubiese reconocido tal derecho. Podemos y debemos tomar conocimiento judicial del hecho de que el aquí apelante no ha recibido tal reconocimiento de este Tribunal en ningún momento, a menos que lo haya obtenido bajo otro nombre distinto, lo que equivaldría a un fraude que de nada podría servirle en un caso de esta naturaleza. Siendo esto así, la regla de *res judicata* no podía levantarse y aplicarse con éxito por el Pueblo de Puerto Rico en el año 1941 ante la Corte de Ciales en relación con las sentencias condenatorias de 1929 de la Corte de Distrito de Humacao toda vez que los hechos allí litigados y la ley aplicable eran distintos, y tampoco podía por los mismos motivos, levantarse y aplicarse con éxito dicha regla por el acusado en 1946, en este proceso en Bayamón, en relación con la sentencia absolutoria de 1941 en Ciales.

Esto es así porque la regla de res judicata nunca se aplica a casos criminales en tanto en cuanto a la sentencia condenatoria o absolutoria se refiere. Si tal fuere el caso, dicha sentencia constituiría exposición anterior (*former jeopardy*) y no res judicata. Aquí debemos determinar si ciertas cuestiones de hecho o de derecho fueron previamente adjudicadas entre las partes y constituyen por tanto res judicata en el presente caso. La pregunta a contestar es ¿qué hechos estaban en controversia y fueron adjudicados

ante la Corte Municipal de Ciales? El récord ante nos demuestra que la controversia allí litigada fué si el apelante tenía un diploma de médico y había ejercido la profesión durante cinco años con anterioridad al año 1919. La prueba de cargo se limitó a demostrar que el apelante había atendido, como médico, a la esposa del denunciante mientras éste estaba preso. La de descargo trató de demostrar que él tenía un diploma de Doctor en Medicina del Hahneman Medical College and Hospital of Chicago expedido en el año 1913 y que desde dicha fecha viene ejerciendo la medicina en Puerto Rico. La Corte Municipal, a base de esos hechos, y aplicando la Ley núm. 43 del 7 de junio de 1919, supra, y los casos de *Pueblo* v. *Rodríguez*, 33 D.P.R. 850, 854; *Pueblo* v. *Cabrera y Rincón*, 34 D.P.R. 470, 475 y *Pueblo* v. *Rosa Quiñones*, 36 D.P.R. 250, absolvió al acusado.

Estos casos interpretan el alcance del disponiéndose contenido en la sección 3 de las leyes de 1911 y de 1919, supra, y únicamente en el de *Pueblo* v. *Rodríguez*, supra, fué que este Tribunal Supremo, reconoció el derecho que tenía el allí acusado de ejercer la medicina bajo dichas leyes.

De manera que los hechos litigados ante la Corte Municipal de Ciales lo fueron bajo la errónea premisa de que el *disponiéndose* de la ley de 1919, estaba en vigor y autorizaba al aquí apelante a ejercer la medicina. Como hemos visto, esto no es cierto. Por el contrario, la ley de 1931 dispuso que solamente aquéllos que por sentencia del Tribunal Supremo de Puerto Rico tenían un derecho reconocido de ejercer dicha profesión, podían continuar ejerciéndola sin una licencia. Por consiguiente, la controversia de hecho que debió haberse litigado y nunca fué litigada en Ciales, era si esta Corte había reconocido o no el derecho al acusado de ejercer la medicina y cirugía en Puerto Rico a virtud de legislación anterior. Como ese hecho no fué litigado en Ciales, la Corte de Distrito de Bayamón estaba en libertad de considerarlo. Es cierto que la corte inferior

tampoco lo consideró pero esto se debió a que el acusado no levantó como defensa el que, como cuestión de hecho, su derecho a ejercer la medicina había sido previamente reconocido por esta Corte.

Como indica nuestra decisión en el caso de *Pueblo* v. *Lugo*, 64 D.P.R. 554, 558-561, bajo la doctrina de *estoppel* colateral la sentencia anterior es concluyente solamente en cuanto a aquellas materias que de hecho se suscitaron y verdaderamente o por necesidad se litigaron y adjudicaron, pero no es concluyente en cuanto a aquellas materias que pudieron ser pero no fueron litigadas y adjudicadas en la acción anterior. En esta última situación la doctrina de *estoppel* colateral tiene una aplicación mucho más limitada, ya que, como se dice en el caso de *Commissioner* v. *Sunnen*, 333 U. S. 591, 599, dicha doctrina "tiene por miras evitar acciones repetidas sobre materias que ya han sido resueltas y que han permanecido substancialmente estáticas, de hecho y legalmente. No está hecha para establecer derechos adquiridos (*vested rights*) en decisiones que han llegado a ser obsoletas o erróneas en el transcurso del tiempo..."

No son los fundamentos erróneos que exponga una corte en una sentencia los que deben tomarse en consideración para resolver si la sentencia en sí es correcta o no. Y si bien no podemos ni estamos interviniendo con la absolución del apelante en Ciales, no debemos olvidar que, al determinar si como cuestión de política pública la doctrina de res judicata debe o no ser aplicada, tanto en casos criminales como en casos civiles, este Tribunal es el llamado también a determinar previamente, "qué fué de hecho lo resuelto" en el caso anterior. *Monagas et al.* v. *Vidal Garrastazu*, 170 F.2d. 99. Con más razón debe ser esto así cuando nos confrontamos con un caso criminal en el cual está envuelta otra cuestión de alta política pública como lo es la salud y seguridad de la comunidad tan directamente afectada por el

indebido ejercicio de la medicina por personas que no reúnan las condiciones de preparación exigidas por la ley.

■ El récord de la Corte Municipal de Ciales demuestra que el acusado fué absuelto por entender la corte que el acusado estaba autorizado a ejercer la medicina de acuerdo con el *disponiéndose* de la ley de 1919, supra. Empero, como hemos visto, la ley de 1931 expresamente limitó tal derecho a aquellas personas que por sentencia de este Tribunal hubieran sido autorizadas a ejercer la profesión médica de acuerdo con la legislación anterior. Esta era la única defensa, como cuestión de hecho, que pudo haber planteado el apelante ante la corte de Ciales (excepto, desde luego, la defensa de que no estaba ejerciendo la profesión y eso lo admitió) y no la levantó y menos aún fué litigada. La aplicación errónea de la ley de 1919 hecha por la corte, aunque sirviera para absolver al acusado en aquel caso, no debe servir de base para perpetuar dicho error y para aplicar la regla de política pública de cosa juzgada en un caso en que está envuelta la protección de la salud y la seguridad de la comunidad contra el indebido ejercicio de la medicina por personas no autorizadas por ley.

No se cometió el primer error.

■ Por el segundo se alega que la corte inferior erró al declarar al acusado reincidente del delito que se le imputa en la denuncia.

El apelante fué sentenciado de acuerdo con el artículo 9 de la Ley núm. 22 aprobada el 22 de abril de 1931, que en lo pertinente, dispone que:

"Toda persona que fuere denunciada y convicta de ejercer ilegalmente la medicina o cirugía, . . . . . contraviniendo a las disposiciones de esta Ley, por cada infracción incurrirá en un delito de *misdemeanor* y será castigada con una multa que no bajará de veinticinco dólares o prisión en la cárcel, o ambas penas a discreción del Tribunal; . . . . . *Disponiéndose, además,* que en caso de reincidentes el delito aparejará pena mínima de treinta días de cárcel."

Arguye el apelante que los "reincidentes" a que se refiere este artículo son aquéllos que, de acuerdo con el mismo han sido convictos de ejercer ilegalmente la medicina o cirugía "contraviniendo a las disposiciones de esta Ley", y no a aquéllos que puedan haber sido convictos de violar las disposiciones de otra ley anterior, como lo fué el apelante en Humacao de haber ejercido la medicina en violación de la ley de 1923, según enmendada en 1924.

Tiene razón a nuestro juicio el apelante. El artículo 9 de la ley de 1931, supra, es claro al determinar que se refiere a violaciones de la ley de 1931. Es más, las leyes de 1923 y 1924 fueron derogadas por dicha ley. Al discutir el primer error, hemos resuelto que la cuestión de hecho a resolverse en el caso era una que surgía de la ley de 1931 y no de las leyes anteriores. La alegación de reincidencia en la denuncia en el presente caso se refiere a las sentencias condenatorias de 1929 en Humacao por infracción a la ley de 1923 enmendada en 1924. No es ésa la reincidencia contemplada por la ley de 1931 en la cual se establece una pena de cárcel para el reincidente, pena que no tenían las leyes anteriores.

En una situación similar, se dijo en el caso de *Walker* v. *Commonwealth,* 232 S. W. 617 (Ky. 1921): "Se observará que las penalidades provistas por la ley de 1920 son más severas que aquéllas de la ley de 1916; y además que las penalidades impuestas por la ley sólo pueden ser como resultado de una violación de 'cualquier disposición de esta ley' ", y se resolvió que, para poder condenar al acusado como reincidente, la convicción anterior tenía que ser por una violación de la ley de 1920. Al mismo efecto véanse *Scott* v. *Commonwealth,* 298 S. W. 378 (Ky. 1927); *State* v. *Bailey,* 115 So. 613 (La. 1927). Es cuando la ley posterior se limita a enmendar una ley anterior que la pena por reincidencia incluída en la ley enmendatoria puede basarse en una convicción bajo la ley anterior a su enmienda. *State*

574

v. *Butlignoni*, 203 P. 76 (Wash. 1922); *State* v. *Gendron*, 118 A. 814 (New Hamp. 1922); *State* v. *Costello*, 139 A. 922 (New Hamp. 1928).

Ahora bien, como la sentencia de treinta días de cárcel impuesta al apelante, como reincidente, está dentro del límite de la sentencia que pudo haber impuesto la corte inferior por una primera infracción de la ley de 1931, consideramos que *la sentencia apelada debe ser modificada en el sentido de imponer al acusado treinta días de cárcel con costas por infracción al artículo 9 de la Ley núm. 22 de 1931 y, así modificada, se confirma.*

El Juez Asociado Sr. Negrón Fernández no intervino.