[Crim. No. 741.    Third Appellate District.—March 25, 1924.]

THE PEOPLE, Respondent, v. B. JOHANSEN et al., Appellants.

[1] CRIMINAL SYNDICALISM ACT—TERM "WILLFULLY AND INTENTIONALLY" DEFINED.—The words "willfully and intentionally" in an indictment relate to the mental attitude of the offender rather than to the place of the offense.

[2] ID.—CRIMINAL CONSPIRACY—JURISDICTION.—Jurisdiction of a criminal conspiracy is in the county where the agreement of conspiracy is entered into or in any county in which an overt act is committed in furtherance thereof.

[3] ID. — MEMBERSHIP IN FORBIDDEN ORGANIZATION — JURISDICTION.— Since membership in a forbidden organization, without the commission of an overt act, is made punishable by the Criminal Syndicalism Act, jurisdiction of the crime of being a member thereof is in any county into which such a member may go during the continuance of his membership.

---

2. Venue of prosecution for criminal conspiracy, note, **Ann. Cas.** 1914A, 632. See, also, 5 R. C. L. 1076.

[4] ID.—COMPULSORY ATTENDANCE IN COUNTY—JURISDICTION.—In such a case, where jurisdiction depends upon the presence of the accused in the county, the superior court thereof can acquire such jurisdiction by compelling the accused, although a resident elsewhere, to attend as a witness in another action pending in the county, or by otherwise compelling his presence in the county.

[5] ID.—PRIOR ACQUITTAL—SUBSEQUENT OFFENSE.—The fact that, at an earlier date, in another county, defendants were indicted on a charge of being members of the I. W. W., and were duly tried and acquitted, did not constitute a bar to their subsequent prosecution on the same charge, but predicated upon their membership in said organization subsequent to the date of their former trial and acquittal.

[6] ID.—CONTINUING CONSPIRACY—PRIOR PROSECUTION.—In such cases, the conspiracy is a continuing one and its illegality is not alone in the act of engaging therein as a member, but in the continuance of the membership; and a prior acquittal or conviction is not a bar to a subsequent continuance in the conspiracy.

[7] ID.—CHARACTER OF ORGANIZATION—EVIDENCE—SUBSEQUENT LITERATURE.—In a prosecution under the Criminal Syndicalism Act upon a charge of membership in the I. W. W., it is not error to admit in evidence literature published and circulated after the arrest of defendants, where the court instructs the jury that such evidence is admitted for the sole purpose of showing the character of the organization.

[8] ID.—ATTITUDE TOWARD RELIGION—IRRELEVANT EVIDENCE.—In this prosecution under the Criminal Syndicalism Act upon a charge of membership in the I. W. W., it was error to admit evidence relative to the attitude of that organization toward churches and religion; but it could not be said that the admission of such evidence resulted in a miscarriage of justice.

[9] ID.—ADOPTION OF THE GENERAL STRIKE—INSTRUCTIONS.—In such a prosecution, the court having instructed the jury, at the request of defendants, that the adoption of the "general strike as a means of accomplishing industrial and political ends, and changes of control . . . if unaccompanied by illegal acts would not be violative of law," the further instruction that if such general strike be conducted in such a manner "as to amount to unlawful methods of terrorism for the purpose of bringing about a change in industrial ownership or control, or affecting any political change, then use of the general strike under such conditions is a violation of the Criminal Syndicalism Act," while not adding anything to the clarity of defendants' requested instruction, does not contain any incorrect statement of the law.

[10] ID.—CHARACTER OF ORGANIZATION—KNOWLEDGE—INSTRUCTIONS—EVIDENCE.—In such prosecution, while the court should have given a specific instruction to the effect that knowledge of the character of the organization is an element of the crime charged, the court having instructed the jury that in order to convict a defendant

it was necessary to find that he was "willfully, unlawfully, feloniously and knowingly a member of an organization, society, group and assemblage of persons . . . organized and assembled to advocate, teach and aid and abet criminal syndicalism," and other instructions having used the word "knowingly" in a similar connection, and the evidence having shown that defendants had been members of the organization for a long time and had previously been tried on a similar charge, it was highly improbable that any one of them was ignorant of the criminal character of the organization.

(1) 31 C. J., p. 667, sec. 187 (1926 Anno.).   (2) 12 C. J., p. 640, sec. 235.   (3) 33 C. J., p. 163, sec. 19.   (4) 33 C. J., p. 164, sec. 25. (5) 33 C. J., p. 164, sec. 25.   (6) 16 C. J., p. 268, sec. 447.   (7) 33 C. J., p. 165, sec. 26 (1926 Anno.).   (8) 33 C. J., p. 166, sec. 26 (1926 Anno.).   (9) 33 C. J., p. 165, sec. 25.   (10) 33 C. J., p. 165, sec. 25.

APPEAL from a judgment of the Superior Court of Sacramento County.   Charles O. Busick, Judge.   Affirmed.

The facts are stated in the opinion of the court.

Austin Lewis and R. W. Henderson for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

FINCH, P. J.—The defendants were convicted of violation of the Criminal Syndicalism Act.   (Stats. 1919, p. 281.) They have appealed from the judgments of conviction and the orders denying their motions for new trials.

In the month of June, 1923, the criminal syndicalism case of *People* v. *Stewart* and others was on trial in the superior court of Sacramento County.   The defendant Wood was then a resident of Alameda County and the other defendants herein were residents of Los Angeles County.   It does not appear that any of them had ever been in Sacramento County.   In obedience to subpoenas regularly issued and served upon them they all appeared as witnesses for defendants in the Stewart case and testified, among other things, that they were members of the I. W. W.   Immediately after leaving the witness-stand, though not in the courtroom or in the presence of the jury, the defendants were arrested and thrown into jail and the indictment herein was thereafter found against them.

It is urged that, since the defendants were in Sacramento County under compulsion, and not voluntarily, they were not willfully and intentionally members of the organization in that county and that, therefore, the superior court of such county was without jurisdiction of the offense charged. **[1]** It may be observed at the outset that the words "willfully and intentionally" in an indictment relate to the mental attitude of the offender rather than to the place of the offense. Section 777 of the Penal Code provides that "except as herein otherwise provided, the .jurisdiction of every public offense is in the county wherein it is committed." **[2]** Jurisdiction of a criminal conspiracy is in the county where the agreement of conspiracy is entered into or in any county in which an overt act is committed in furtherance thereof. (*Hyde* v. *United States,* 225 U. S. 347 [Ann. Cas. 1914A, 614, 56 L. Ed. 1114, 32 Sup. Ct. Rep. 793, see, also, Rose's U. S. Notes].) **[3]** Since membership in a forbidden organization, without the commission of an overt act, is made punishable by the statute, it follows logically that jurisdiction of the crime of being a member thereof is in any county into which such a member may go during the continuance of his membership. **[4]** The question then is whether, in a case where jurisdiction depends upon the presence of the accused in a county, the superior court thereof can acquire such jurisdiction by compelling the accused to attend as a witness in another action, or by otherwise compelling his presence in such county. The case of *People* v. *Martin,* 188 Cal. 281 [21 A. L. R. 1399, 205 Pac. 121], is decisive of the question. In that case, as in this, jurisdiction of the offense depended upon the presence of the defendant in the county and he was taken into the county under process of the court on a different charge. from that of which he was finally convicted. He was extradited from the state of New Mexico to the county of San Diego on a charge of embezzlement. While held as a prisoner in that county he was charged with the crime of bigamy alleged to have been committed in Orange County prior to his extradition from New Mexico. Section 785 of the Penal Code provides: "When the offense, either of bigamy or incest, is committed in one county and the defendant is apprehended in another, the jurisdiction is in either county." The defendant contended that the superior

court of San Diego County was without jurisdiction and
offered to prove at the trial that "after the alleged marriage
in Orange County he never returned to San Diego County
until extradited." The court refused to admit such proof.
On appeal it was held that the offered evidence was im-
material and that the superior court of San Diego County
had jurisdiction of the offense of the alleged bigamy com-
mitted in Orange County, notwithstanding the defendant
had not voluntarily entered San Diego County after the
commission of the offense.

[5] On the first day of November, 1922, in the county
of Los Angeles, the defendants Ross, Johansen, and Brat-
land were indicted on a charge of being members of the
I. W. W. on the twenty-fifth day of October, 1922. They
were duly tried and were acquitted on the eleventh day
of May, 1923. On their arraignment herein they pleaded
such acquittal as a bar. In support of their contention
that such acquittal was a bar, appellants quote from 12
Cyc. 281, as follows: "An acquittal or conviction is no bar
to a subsequent indictment for the same offense or the same
species of crime, where the latter is alleged to have been
committed at a different date from that previously tried,
unless the offense is continuous." The statement as to con-
tinuing offenses has relation, of course, to the continuance
thereof up to the time of the charge and not to its continu-
ance thereafter. If an acquittal or a conviction were a bar
to prosecution for the subsequent continuance of the offense,
then such acquittal or conviction would constitute, in effect,
a license to so continue the offense. The jury in the Los
Angeles case may have acquitted the defendants on the
ground that they were without guilty knowledge of the
character of the organization. Such acquittal would afford
no protection to the defendants in the continuance of their
membership after acquiring such knowledge. [6] The con-
spiracy is a continuing one and its illegality is not alone
in the act of engaging therein as a member, but in the
continuance of such membership. (*People* v. *Steelik,* 187
Cal. 361, 376 [203 Pac. 78].) A prior acquittal or con-
viction is not a bar to a subsequent continuance in the
conspiracy. (*United States* v. *Swift,* 186 Fed. 1002.)

[7] Complaint is made of the admission in evidence of
certain literature published and circulated after the arrest

of defendants. The court instructed the jury that this evidence was admitted for the sole purpose of showing the character of the organization. Its admission for the limited purpose stated was not error. The character of the organization at a particular time must be determined by inferences to be drawn from proof of its acts and conduct within reasonable limits before and after the time in question. The question is not unlike that of proof of mental capacity at a particular time, in which case it has always been held proper to admit proof of acts and conduct both before and after the time in dispute.

[8] Evidence relative to the attitude of the organization toward churches and religion was erroneously admitted. (*People* v. *Flanagan,* 65 Cal. App. 268 [223 Pac. 1014].) Both in quantity and in character, however, this evidence was of less importance than in the Flanagan case and it is not believed that its admission resulted in a miscarriage of justice.

[9] At the request of defendants the court instructed the jury as follows: ''Evidence has been introduced to show and purporting to show that the Industrial Workers of the World advocate the general strike as a means of accomplishing industrial and political ends, and changes of control. The adoption of such a strike for such purposes if unaccompanied by illegal acts would not be violative of law.'' The court added to the instruction a statement to the effect that if such general strike be conducted in such a manner ''as to amount to unlawful methods of terrorism for the purpose of bringing about a change in industrial ownership or control, or affecting any political change, then the use of the general strike under such conditions is a violation of the Criminal Syndicalism Act.'' While the addition to the instruction may not add anything to its clarity, it does not contain any incorrect statement of the law.

[10] The instructions given and refused upon the question of intent and guilty knowledge are unlike those of the Flanagan case and are substantially the same as in *People* v, *Bailey, ante,* p. 1 [225 Pac. 752], wherein the judgment was affirmed. A specific instruction to the effect that knowledge of the character of the organization is an element of the crime charged should have been given. (*People* v.

*Flanagan, supra;* see, also, *United States* v. *Tod,* 263 U. S. 149 [68 L. Ed. 221, 44 Sup. Ct. Rep. 260].)    The court, however, instructed the jury that in order to convict a defendant it was necessary to find that he was ''willfully, unlawfully, feloniously and knowingly a member of an organization, society, group and assemblage of persons . . . organized and assembled to advocate, teach and aid and abet criminal syndicalism.''    Other instructions used the word ''knowingly'' in a similar connection.    The jury must have understood from these instructions that knowledge of the character of the organization on the part of the defendants was essential to a conviction.    Johansen, Ross, and Bratland had been members of the organization for periods of time ranging from about eighteen months to four years.    They had been tried on a similar charge prior to their arrest and must have heard the evidence given at such trial to prove the character of the organization.    Pederson and Wood had been active members for more than ten years.    In view of the foregoing facts, it is highly improbable that any one of the defendants was ignorant of the criminal character of the organization.

The further contentions of appellants which would merit discussion if presented for the first time are fully considered and overruled in one or more of the following cases: *People* v. *Steelik, supra; People* v. *Taylor,* 187 Cal. 378 [203 Pac. 85] ; *People* v. *Roe,* 58 Cal. App. 690 [209 Pac. 381] ; *People* v. *La Rue,* 62 Cal. App. 276 [216 Pac. 627] ; *People* v. *Flanagan, supra,* and *People* v. *Bailey, supra.*    No useful purpose would be served by renewing the discussion of questions which may be considered as settled.    From an examination of the whole case, it cannot be said that the errors committed in the trial of the case have resulted in a miscarriage of justice.

The judgments and the orders are affirmed.

Plummer, J., and Hart, J., concurred.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 21, 1924, and the following opinion then rendered thereon:

THE COURT.—The petition for a hearing by this court after decision by the district court of appeal is denied. We do not approve the following statement contained in the opinion of that court: "The case of *People* v. *Martin*, 188 Cal. 281 [21 A. L. R. 1399, 205 Pac. 121], is decisive of the question." We are satisfied with the conclusion of that court that the evidence was sufficient to justify the implied finding of the jury to the effect that the offense charged against these petitioners was voluntarily committed by them within the county of Sacramento. While it is true that petitioners came into that county involuntarily, it is also true that they had ample opportunity to sever their connection with the unlawful organization of which they were members before coming into that county. Having elected not to do this, they cannot be heard to say that the offense of which they stand convicted was not voluntarily committed by them within the county of Sacramento.