THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, v.
TOMÁS LUGO IRIZARRY, Defendant and Appellant.

No. 10684. Argued December 19, 1944.—Decided February 13, 1945.

530

*Enrique Báez García* for appellant. *R. A. Gómez, Prosecuting Attorney (Fiscal)*, and *Luis Negrón Fernández, Assistant Prosecuting Attorney,* for appellee.

MR. JUSTICE SNYDER delivered the opinion of the court.

This case raises a question which has not heretofore been decided by this court. May the doctrine of *res judicata* be invoked in this jurisdiction in criminal cases?

The issue arose as follows: the defendant was prosecuted in the municipal court for abandonment and failure to support his child from March, 1942 to July 9, 1942 (§ 263, Penal Code, 1937 ed.). He was convicted and appealed to the district court. In the district court the defendant pleaded not guilty. He also filed a plea of former jeopardy. In support of the latter plea, the defendant presented in evidence a properly authenticated copy of a judgment of the munici-

pal court, dated June 18, 1941, showing that the defendant had been acquitted of the same charge involving alleged failure to support the same child from January 16, 1941 to February 25, 1941. The lower court overruled the plea of former jeopardy and after a trial on the merits convicted the defendant. The case is here on appeal from the judgment sentencing the defendant to serve a term in jail, which sentence was suspended on condition that the defendant pay a certain sum per month for support of the child involved.

 The defendant asserts that, under the aforesaid facts, his plea of former jeopardy [1] should have prevailed. We are unable to agree with this contention. While the "application of the double jeopardy clause to particular cases has not been an easy task for the courts," [2] the instant case is clearly not encompassed by that doctrine. The crime here is one of those characterized as a continuing offense. And in such cases the rule is that prosecution therefor cannot be brought piecemeal. Once a case is instituted and concluded, it bars all prosecutions for the same offense as to the facts which occurred prior to indictment; but a new prosecution may be had for the same continuing offense, if committed subsequent to the date of indictment. irrespective of the result in the first case. (*In re Snow*, 120 U. S. 274; *Blockburger* v. *United States*, 284 U. S. 299, 302. Cf. *People* v. *Pérez*, 47 P.R.R. 724; *People* v. *Canals*, 48 P.R.R. 775, 784–5.) Consequently, the fact that the defendant was prosecuted and acquitted for the continuing offense of abandonment and failure to support a child from January 16, 1941 to February 25, 1941, does not enable him to interpose successfully the plea of former jeopardy against the present

---

[1] Section 2 of our Organic Act provides that " . . . no person for the same offense shall be twice put in jeopardy of punishment . . . " (Title 48 U.S.C.A., § 737.) Section 6 of the Code of Criminal Procedure, 1935 ed., provides that "No person can be subjected to a second prosecution for a public offense for which he has once been prosecuted and convicted or acquitted."

[2] *U. S. ex rel. Marcus* v. *Hess*, 317 U.S. 537, 548.

prosecution for the same alleged offense involving the same child for a period subsequent to that charged in the earlier complaint, i. e., from March, 1942 to July 9, 1942.

■ But the conclusion we have reached does not resolve the problem raised by the facts of this case. The defendant has pleaded former adjudication. Because the proof discloses that the first case involved a different or separate offense of the same nature, the plea of former jeopardy fails here. . But the courts can not permit the rights of a defendant in a criminal case to be prejudiced because he attaches the wrong legal label to the facts he pleads and proves. We therefore turn to the question of what part, if any, the doctrine of *res judicata* plays in our law.

■■ Putting temporarily to one side the more difficult problem of the exact effect and scope of *res judicata* in criminal cases, we begin by pointing out that, although it is a matter of first impression in this jurisdiction, it has long been familiar law in the Federal courts and in the great majority of the states that the doctrine of *res judicata* as such is not confined exclusively to civil cases; it has been invoked in criminal cases both for and against defendants in the Federal courts and in the great majority of the states. *United States* v. *Oppenheimer*, 242 U. S. 85, 87–8; *Collins* v. *Loisel*, 262 U. S. 426; *United States* v. *Adams*, 281 U. S. 202, 205; *Steele* v. *United States* No. 2, 267 U. S. 505, 507; [3] *Murphy* v. *United States*, 272 U. S. 630; *Stone* v. *United States*, 167 U. S. 178; *United States* v. *Carlisi*, 32 F. Supp. 479 (Dist. Ct., E. D., N. Y. 1940); *Coffey* v. *United States*, 116 U. S. 436.[4] For the state cases to the same effect, see

---

[3] In this case *res judicata* on an issue was successfully pleaded against the defendant.

[4] The *Coffey* case, decided in 1886, held that acquittal of a defendant in a criminal case for violation of the Federal internal revenue laws barred a suit in rem, which was in the nature of a proceeding for a criminal penalty, for forfeiture of the property involved. Because of the different degrees of proof required in the two cases, this holding has been severely criticized

Annotation, Doctrine of *Res Judicata* in Criminal Cases, 147 A.L.R. 991; Annotation, *Res Judicata* in Criminal Proceedings, 103 American State Reports 19. *Res Judicata,* von Moschzisker, 38 Yale L. J. 299, 325-6.[5]

However, the conclusion that *res judicata* as such may be invoked in criminal cases is far from an answer to its application to particular cases. In a manner analogous to the effect of a plea of former jeopardy in criminal cases, *res judicata* in civil cases operates in many instances as a bar or as merger. In such cases the original cause of action is extinguished by the judgment, and the plea is fatal to the second suit *in toto.* Under those circumstances the judgment is conclusive even as to all matters which might have been, but were not, actually litigated and determined (*Heirs of Rivera* v. *Lugo,* 63 P.R.R. 13; *Laloma* v. *Fernández,* 61

---

(*Mitchell* v. *Commissioner of Internal Revenue,* 89 F.(2d) 873, 878 (C.C.A. 2d, 1937); Paul, Selected Studies in Federal Taxation, Second Series, *Res Judicata* in Federal Taxation, 104, 138-9) and distinguished (*Helvering* v. *Mitchell,* 303 U.S. 391, 405-6). It perhaps no longer represents the law on its particular facts. But the Supreme Court has never waivered from the language found at p. 443 of the *Coffey* case recognizing the applicability of the doctrine of *res judicata* in criminal cases and setting forth the scope of that doctrine in such cases.

[5] Mr. Justice Holmes, speaking for the Court in *United States* v. *Oppenheimer, supra,* says at pp. 87-8:

"Upon the merits the proposition of the Government is that the doctrine of *res judicata* does not exist for criminal cases except in the modified form of the Fifth Amendment that a person shall not be subject for the same offence to be twice put in jeopardy of life or limb; and the conclusion is drawn that a decision upon a plea in bar cannot prevent a second trial when the defendant never has been in jeopardy in the sense of being before a jury upon the facts of the offence charged. It seems that the mere statement of the position should be its own answer. It cannot be that the safeguards of the person, so often and so rightly mentioned with solemn reverence, are less than those that protect from a liability in debt . . . . .

" * * * * * * * *

"The safeguard provided by the Constitution against the gravest abuses has tended to give the impression that when it did not apply in terms, there was no other principle that could. But the Fifth Amendment was not intended to do away with what in the civil law is a fundamental principle of justice (*Jeter* v. *Hewitt,* 22 How. 352, 364), in order, when a man once has been acquitted on the merits, to enable the Government to prosecute him, a second time."

P.R.R. 550; Restatement, Judgments, §§ 61, 68; Scott, Collateral Estoppel by Judgment, 56 Harv. L. Rev. 1, 2–3).

But the plea of former adjudication has the aforesaid sweeping effect in civil cases only if interposed in a subsequent suit involving the same claim or cause of action. It can therefore never produce such a result in a criminal case precisely because *res judicata* comes into play in a criminal case only when a different offense is involved in the second cause. To put it shortly, it becomes necessary to resort to *res judicata* in criminal cases only when a different, not the same, offense is involved. This is because if the second case involved the same offense, the plea of former jeopardy would prevail without further ado.

Our real problem therefore arises when we attempt to delineate the limits of *res judicata* in a criminal case as applied to a case involving a different offense from that involved in the previous adjudication. In civil cases involving such facts the rule is that "where the subsequent action is based upon a different cause of action from that upon which the prior action was based, the effect of the judgment is more limited. The judgment is conclusive between the parties in such a case as to questions actually litigated and determined by the judgment. It is not conclusive as to questions which might have been but were not litigated in the original action. This is the doctrine of collateral estoppel." [6] "The term 'collateral' estoppel is intended to emphasize the fact that the causes of action involved in the two proceedings are different, even though the issues or some of them are the same." [7]

We find the rule for civil cases stated by Mr. Justice Roberts in *Tait v. Western Md. Ry. Co.*, 289 U. S. 620, 623: "The scope of the estoppel of a judgment depends upon whether the question arises in a subsequent action between the same parties upon the same claim or demand or upon a

---

[6] Restatement, Judgments, § 68, Comment *a*, p. 294.

[7] Scott, *supra*, at p. 3.

different claim or demand. In the former case a judgment upon the merits is an absolute bar to the subsequent action. In the latter the inquiry is whether the point or question to be determined in the later action is the same as that litigated and determined in the original action. *Cromwell* v. *County of Sac,* 94 U.S. 351, 352–363; *Southern Pacific R. Co.* v. *United States,* 168 U. S. 1, 48; *United States* v. *Moser,* 266 U. S. 236, 241. . . . ''

This same limited effect of *res judicata,* developed in the civil cases, is found in the criminal cases. Mr. Justice Brandeis puts it as follows in *Collins* v. *Loisel, supra,* at p. 430: '' . . . . the Fifth Amendment in providing against double jeopardy, was not intended to supplant the fundamental principle of *res judicata* in criminal cases . . . But the judgment is *res judicata* only . . . . of the issues of law and fact necessarily involved in that result.'' This limitation on the doctrine of *res judicata* in criminal cases has been carefully observed in a host of cases, most of which can be found in 147 A.L.R. 991, *supra.* To the same effect, *United States* v. *De Angelo,* 138 F.(2d) 466 (C.C.A. 3rd, 1943); *United States* v. *Halbrook,* 36 F. Supp. 345 (Dist. Ct., Mo., 1941).

In *United States* v. *Morse,* 24 F.(2d) 1001 (Dist. Ct., S. D.N.Y., 1926), Judge Thacher, later Solicitor General of the United States and now Judge of the Court of Appeals of New York, in passing on a motion to quash an indictment, used the following language to state the rule: ''As a plea of autrefois acquit in bar to the indictment, the motion cannot be sustained, because the offenses charged are not identical. . . . The judgment upon the former indictment is therefore asserted, not in bar, but as an estoppel, upon the principle that questions of fact or of law, distinctly put in issue and directly determined by a court of competent jurisdiction, cannot afterwards be disputed between the same parties (citing cases).

"To this extent the judgment of acquittal, although upon an indictment charging a different offense, operates as an estoppel, and, if facts necessarily decisive in the case at bar are within its adjudication, the pending indictment should be quashed (citing cases). But, of course, the indictment cannot properly be quashed unless the estoppel of the former judgment precludes proof of facts necessary to sustain it."

Many of the cases cite 2 Freeman on Judgments (5th ed.), § 648, pp. 1364-5, as follows:. "There is no reason why a final judgment in a criminal prosecution or proceeding should not, under proper circumstances, be given conclusive effect as an estoppel or bar. The same policy which dictates the rule in civil cases requires it in criminal cases. . . . The principles applicable in judgments in criminal cases are, in general, identical, so far as the question of estoppel is involved, with the principles recognized in civil cases. . . . But under such circumstances the previous judgment is conclusive only as to those matters which were in fact in issue and actually or necessarily adjudicated. . . . "

█ █ Tested by these well-established principles, the instant case becomes easy to resolve. The former adjudication of acquittal in the municipal court for abandonment and failure to support the child involved herein during 1941 does not operate as a bar by way of former jeopardy to a prosecution for the subsequent and different offense of the same nature, failure to provide such support in 1942. But did the defendant put in issue between himself and the People in the first case the fact of his paternity of the child, and was that issue or fact necessarily adjudicated by his acquittal in the first case, thereby enabling him to plead that the People are estopped to relitigate that same issue in another criminal case charging under the same statute the same type of offense, albeit for a subsequent period and therefore technically a different crime?

The record before us does not specifically show the grounds on which the defendant was acquitted in the first case. It might therefore be conceivably argued that the issue of paternity was not necessarily determined in the first prosecution—that, for example, the defense might well have been that he was actually supporting the child, which was either believed by the municipal court or created a reasonable doubt as to his guilt.

We are not impressed by this argument in this particular case. Sections 2 and 3 of Act No. 108, Laws of Puerto Rico, 1940 (p. 672), provide that in such cases a formal demand for support must be made on the presumptive father by the municipal judge. Pursuant to § 4, he must within eight days appear and "admit or deny the paternity." Section 5 goes on to provide that if he admits paternity, the case is sent to the juvenile court for further action. We have interpreted Act No. 108 to mean that the formal demand is a condition precedent to the prosecution, and that only if paternity is denied after such a formal demand does the municipal court proceed to trial in the usual manner of an ordinary misdemeanor case. *People* v. *Lamboy,* 59 P.R.R. 173; *People* v. *Ramos,* 61 P.R.R. 322, 325.

It therefore cannot be argued in the instant case that the issue of paternity was not necessarily resolved in favor of the defendant in the first case under the theory that at the trial he may have admitted paternity but denied his failure to support the child, and that his acquittal may have therefore resulted from a finding in his favor on the latter ground. If he had admitted paternity, the case, pursuant to Act No. 108, would have been sent by the municipal court to the juvenile court. But since the certified copy of the judgment of acquittal shows that the case was tried in the municipal court, the conclusion is inevitable that he denied paternity. And if he was acquitted in a case in which such a denial was the single issue presented at the trial, the municipal court

must have necessarily found that he was not the father. In so stating, we are not overlooking the argument that even if he denied paternity, the defendant might conceivably (*a*) have been supporting the child, (*b*) have so asserted in his defense, and (*c*) have been acquitted on that ground. But to so hold, unsupported by the record in this particular case, would be purely speculative and therefore cannot under the circumstances herein be controlling. We have before us only a denial of paternity, a prosecution for failure to support, and an acquittal. And the only issue which we are certain was raised and litigated is the denial of paternity. Indeed, the colloquy on this point among the court and counsel shows that all parties substantially conceived that the first case was determined exclusively on the issue of paternity.[7a] Under those circumstances, in view of the statutory provision for trial in the municipal court only in the event of a denial of paternity, we feel that the issue of paternity was a fact necessarily involved in the case, and that the defendant could not, so far as the record before us shows, have been acquitted under any theory other than that he was not the father of the child. We therefore conclude that, under the doctrine of collateral estoppel laid down in the cases, the defense of former adjudication of this issue of fact should have prevailed in the instant case.

We have found only two cases in which the facts are roughly similar to those involved herein. And in both of

---

[7a] In presenting his plea of former adjudication, counsel for the defendant asserted that (T. of R. p. 50) ''. . . we have found that the defendant was acquitted in the municipal court for the offense of abandonment of a child committed after the Act of 1940 went into effect and that the defendant was acquitted after the testimony was heard and considered on its merits . . .'' The district attorney replied that ''. . . If the defendant was tried in the municipal court after 1940 and the defendant *having denied paternity* was acquitted, we understand that even so and even conceding that the defendant was acquitted in the municipal court, the plea of former jeopardy does not lie . . .'' The district court, summarizing the pleadings and contentions of the parties (T. of R. pp. 50–53), pointed out that under the procedure provided by Act No. 108, ''The defendant denied paternity'' in the present case. (Italics ours.)

them the doctrine of *res judicata* was successfully invoked. In *Commonwealth* v. *Ellis*, 35 N. E. 773 (Mass., 1893), the defendant was prosecuted for the offense of failing to support his minor child. At the trial his defense was that the child was not his child, but was a bastard child of his wife. To meet this defense, the Government put in evidence a record of the district court showing a prior conviction and sentence under the same statute for the same offense involving the same child. The district court ruled that the record of the conviction and sentence was conclusive evidence on the issue of paternity, and that the defendant was estopped to set up the alleged illegitimacy of the child as a defense. The court said: "The question of the paternity of the child was necessarily involved in the prior conviction of the defendant. That fact having been determined, it cannot again be litigated between the same parties, unless a different rule applies to criminal proceedings from that which obtains in civil proceedings. See *Sly* v. *Hunt*, 159 Mass. 151, 34 N. E. 187, and cases cited. It is well settled that the rule is the same in both classes of cases. . . ."

In *People* v. *Mojado*, 70 P.(2d) 1015 (Cal., 1937), the defendant was convicted under § 270 of the Penal Code of California for failure to provide for a minor child. The only question on appeal was whether the lower court erred in admitting in evidence the record of the appellant's former conviction of a similar offense in connection with the same child, and in sustaining an objection to the appellant's offer to prove that he was not the father of the child. In affirming the judgment the court said at p. 1016: " . . . In this case there could have been no prior conviction in the absence of a judicial determination that the appellant was the father of this child. The determination of that fact reflected in the judgment, is inseparably a part of that conviction. . . ."[8]

---

[8] This case is not wholly in point, in view of the specific provision of the California statute involved that such a prior conviction may be pleaded and

We have no hesitancy in adopting this rule in this jurisdiction. The public policy embodied in the doctrine of *res judicata* is sufficiently strong and pervading to resist the most eloquent pleas or diversions therefrom to prevent al-

---

proved in a subsequent case brought under the circumstances of that case. Nevertheless, the case is interesting both for its holding and for its implicit recognition that in California, whose Penal Code and Code of Criminal Procedure we have copied, *res judicata* may be invoked in criminal cases. In *People* v. *Housman*, 112 P.(2d) 944, 947 (Cal., 1941), and *People* v. *Ashrawy*, 19 P.(2d) 536 (Cal., 1933), the courts again imply that the doctrine applies in criminal cases in California. And in *People* v. *Johansen*, 226 Pac. 634 (Cal., -1924), the doctrine invoked in the instant case as to continuing offenses is distinguished on the ground that in the *Johansen* case the facts may have changed during the interval between the two prosecutions. That distinction could not, of course, be made on the issue of paternity herein. Our search has revealed no other California cases on this question.

We are therefore not disturbed by the fact that *res judicata* is defined only in § 1204 of our Civil Code, 1930 ed., or by the fact that § 162 of our Code of Criminal Procedure, 1937 ed., copied from California, lists only ''four kinds of pleas to an information,'' including the plea of former jeopardy, but not any plea known as *res judicata*. Apparently, California, and certainly the overwhelming majority of the other states, nevertheless permit such a defense. In *Commonwealth* v. *Spivey*, 48 S.W.(2d) 1076 (Ky., 1932), the court said at p. 1077: ''It is first insisted by the commonwealth that under our Code of Criminal Practice no provision is made for a plea of res adjudicata. It relies on section 172 of the Criminal Code of Practice, which states that there are but three kinds of pleas to an indictment: (1) The plea of guilty; (2) that of not guilty; (3) that of former conviction or acquittal. However, the plea of *res adjudicata*, if it be available in a criminal cause, is really, when advanced by the accused, but an element of the plea of not guilty, because, if it be sustained, then the accused must be held, as was the accused in this case, not guilty of the offense charged. We are of the opinion that, when advanced by the accused, the plea of res adjudicata is available under the plea of not guilty. . . . ''

We need not inquire in this case whether *res judicata* must in criminal cases be characterized and entered technically as a separate plea, or whether it is subsumed under the general plea of not guilty. There is room for argument that since, unlike the ordinary plea in bar, it is addressed to particular issues rather than to the case as a whole, it may be raised by motion or under the plea of not guilty. In any event, it is enough to say in the instant case that the defendant requested and obtained the permission of the court, without objection from the district attorney, to make a formal plea—although, as we have seen, he mislabeled it former jeopardy—in which he adduced all the facts and which the court overruled on the merits (cf. *People* v. *Marrero*, 18 P.R.R. 888). We deem it advisable to add, however, that in future cases counsel should raise the defense of *res judicata* by a special motion specifically making that defense.

leged injustices in individual cases.[9] That the facts involved in the defense of former adjudication in a criminal case fall short of former jeopardy should therefore not lead us to dilute the abiding principle which applies to all cases, civil or criminal, that in a suit in which the parties, issues, and nature of the cause are the same, the law provides for a single determination thereof, and no more. This principle is so thoroughly embodied in the law involving civil suits that no illustrations need be given. In the criminal law examples readily come to mind. A defendant is prosecuted for adultery. His defense is that he and the woman involved are married. He is acquitted. If he continues to co-habitate with the same woman, who would be heard to say that, technically different though the subsequent offense be, the State should be permitted to harass him with subsequent prosecutions which must necessarily be based on a fact already decided against the State in a similar case involving the same charge in which the said fact was equally necessary for decision thereof? The same point would be equally valid if a subsequent prosecution were attempted for a violation of the Fair Labor Standards Act after acquittal where the only defense was lack of coverage of the business of the defendant; or if the defendant were again prosecuted for violation of the Federal Act, prohibiting transportation of firearms in interstate commerce by one previously convicted of a crime of violence, after acquittal in a case where the defendant raised only the issue that he had never been previously convicted of a crime of violence.[10]

---

[9] Indeed, no case illustrates better how rigorously that policy operates than the rule that the rights of the same parties involving the same cause of action are resolved for all time even by a decision reached by a tie vote, which to a layman may seem like no decision at all. *Insular Board of Elections* v. *District Court*, 63 P.R.R. 786.

[10] All these examples are predicated on the premise that, unlike the *Johansen* case, the underlying facts remained unchanged in the interval between prosecutions.

We need hardly add that a judgment in a criminal case, even as to facts necessarily determined thereby, is no bar on the ground of *res judicata* to a subsequent civil action based on the same facts. The converse is, of course, likewise true. The doctrine could not apply in those situations because of the difference in parties and in the quantum of proof required in civil and criminal cases. *Helvering* v. *Mitchell, supra,* at p. 397; von Moschzisker, *supra,* at pp. 325–26. The acquittal in the first criminal case herein would, for example, therefore not operate to make the issue of paternity *res judicata* in a subsequent civil suit for filiation. See *State* v. *Morrow,* 75 P.(2d) 737 (Ore., 1938). Cf. *Ortiz* v. *Viera,* 61 P.R.R. 495.

Also, we are not called on to answer in this case the question of whether the plea of *res judicata* could be successfully interposed as to an issue of fact already litigated in a previous case when the second case against the same defendant involved an alleged crime of a different nature under a different statute. Here we hold only that *res judicata* bars a subsequent prosecution for the same continuing offense where the defendant has previously been acquitted on the same charge for an earlier period if in the first case an issue of fact was by his acquittal necessarily determined in favor of the defendant and a contradictory finding on that issue is indispensable for conviction in the second case.

The result we have reached makes it unnecessary to examine the numerous other errors assigned by the defendant. The judgment of the district court will be reversed and another judgment will be entered acquitting the defendant.