554

EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* TOMÁS LUGO IRIZARRY, acusado y apelante.

Núm. 10684.—*Sometido:* Diciembre 19, 1944.  *Resuelto:* Febrero 13, 1945.

*Enrique Báez García,* abogado del apelante; *R. A. Gómez, Fiscal del Tribunal Supremo* y *Luis Negrón Fernández, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

El Juez Asociado Señor Snyder emitió la opinión del tribunal.

Este caso levanta una cuestión que hasta la fecha no ha sido resuelta por este tribunal. ¿Puede invocarse en esta jurisdicción en casos criminales la doctrina de cosa juzgada?

El problema surgió como sigue: el acusado fué denunciado en la corte municipal por haber abandonado y dejado de mantener a su hijo desde marzo de 1942 a julio 9 de 1942 (Artículo 263, Código Penal, Edición de 1937). Fué declarado culpable y apeló para ante la corte de distrito. En la corte de distrito el acusado alegó ser inocente. También formuló la alegación de exposición anterior. Para sostener esta alegación, el demandado presentó en evidencia copia certificada de una sentencia de la corte municipal, fechada el 18 de junio de 1941, acreditativa de que el acusado había sido absuelto del mismo delito que envolvía el dejar de mantener al mismo menor desde el 16 de enero de 1941 al 25 de febrero de 1941. La corte inferior desestimó la alegación de exposición anterior y después de un juicio en los méritos declaró culpable al acusado. El caso está ante nos en apelación contra la sentencia imponiendo al acusado pena de cárcel, sentencia que fué dejada en suspenso a condición de que el acusado depositara mensualmente cierta cantidad para el sostenimiento del menor.

El acusado afirma que, bajo los hechos expuestos, debió haber prosperado su alegación de exposición anterior.[1] No podemos convenir con esta contención. Si bien la "aplicación de la cláusula de exposición anterior a casos especí-

---

[1] El artículo 2 de nuestra Carta Orgánica dispone que ". . . ninguna persona será puesta dos veces en riesgo de ser castigada por el mismo delito . . ." (Título 48 U.S.C.A. Sección 737). El artículo 6 del Código de Enjuiciamiento Criminal, Edición 1935, dispone que "Ninguna persona podrá ser procesada segunda vez por un delito público, después de haber sido ya condenada o absuelta por el mismo delito."

·ficos no ha sido tarea fácil para las cortes,''[2] claramente dicha doctrina no cubre el presente caso. El delito aquí envuelto es uno de los llamados delito continuo. Y en tales casos la regla es que su prosecución no puede entablarse fragmentariamente. Una vez que se entabla y se concluye un caso, éste impide toda prosecución por el mismo delito en cuanto a hechos que ocurrieron con anterioridad a la denuncia; pero puede entablarse nueva denuncia por el mismo delito continuo, si se ha cometido después de la fecha de la denuncia, independientemente del resultado del primer caso (*In re Snow*, 120 U. S. 274; *Blockburger* v. *United States*, 284 U. S. 299, 302. *Cf. Pueblo* v. *Pérez*, 47 D.P.R. 765; *Pueblo* v. *Canals*, 48 D.P.R. 794, 802-3). En su consecuencia, el hecho de que el acusado fué denunciado y absuelto por el delito continuo de abandono de un menor desde el 16 de enero de 1941 al 25 de febrero de 1941, no le da derecho a interponer con éxito la alegación de exposición anterior contra esta denuncia por el mismo alegado delito que envuelve el mismo menor durante un período posterior a aquel comprendido en la primera denuncia, o sea, desde marzo de 1942 a julio 9 de 1942.

Pero la conclusión a que hemos llegado no resuelve el problema suscitado por los hechos de este caso. El acusado ha alegado adjudicación previa. Toda vez que la prueba demuestra que el primer caso envolvía un delito diferente o separado de la misma naturaleza, no procede aquí la alegación de exposición anterior. Pero las cortes no pueden permitir que se perjudiquen los derechos de un acusado en un caso criminal porque éste denomine erróneamente las alegaciones que interponga y pruebe. Por tanto pasamos a la cuestión de qué parte, si alguna, juega la doctrina de cosa juzgada en nuestro derecho.

Pasando por alto temporalmente el más difícil problema del efecto y alcance exactos de la doctrina de cosa

---

(2) *U. S. ex rel. Marcus* v. *Hess*, 317 U. S. 537, 548.

juzgada en casos criminales, empezaremos por indicar que, aun cuando es una cuestión nueva en esta jurisdicción, hace tiempo que es ley bien conocida en las cortes federales y en la gran mayoría de los estados, que la doctrina de cosa juzgada como tal no está limitada exclusivamente a casos civiles; sino que ha sido invocada en casos criminales tanto por como en contra de los acusados en las cortes federales y en una gran mayoría de los estados. *United States* v. *Oppenheimer,* 242 U. S. 85, 87–8; *Collins* v. *Loisel,* 262 U. S. 426; *United States* v. *Adams,* 281 U. S. 202, 205; *Steele* v. *United States No. 2,* 267 U. S. 505, 507;[3] *Murphy* v. *United States,* 272 U. S. 630; *Stone* v. *United States,* 167 U. S. 178; *United States* v. *Carlisi,* 32 F. Supp. 479 (Dist. Ct., E. D., N. Y. (1940); *Coffey* v. *United States,* 116 U. S. 436.[4] Para referirse a los casos estatales al mismo efecto, véase la anotación *Doctrine of res judicata in Criminal Cases,* 147 A.L.R. 991; Anotación, *Res Judicata in Criminal Proceedings,* 103 American State Reports 19. *Res Judicata,* von Moschzisker, 38 Yale L. J. 299, 325–6.[5]

---

[3] En este caso la alegación de cosa juzgada en cuanto a un punto fué interpuesta con éxito en contra del acusado.

[4] El caso de *Coffey,* resuelto en 1886, resolvió que la absolución de un acusado en un caso criminal por infracción a las leyes federales de rentas internas impedía un pleito *in rem* que tenía la naturaleza de un procedimiento para una penalidad criminal, o sea la confiscación de los bienes envueltos. En virtud de los diferentes grados de prueba requeridos en los dos casos, esta decisión ha sido criticada severamente (*Mitchell* v. *Commissioner of Internal Revenue,* 89 F. (2d) 873, 878 (C.C.A. 2d. 1937); Paul, *Selected Studies in Federal Taxation, Second Series, Res Judicata in Federal Taxation,* 104, 138–9) y distinguida (*Helvering* v. *Mitchell,* 303 U. S. 391, 405–6). Quizá ya no represente la ley sobre sus hechos específicos. Pero la Corte Suprema nunca ha repudiado el lenguaje que se encuentra a la pág. 443 del caso de *Coffey* que reconoce la aplicabilidad de la doctrina de cosa juzgada en casos criminales y que expone el alcance de dicha doctrina en tales casos.

[5] El Juez Asociado Sr. Holmes, hablando por la corte en el caso de *United States* v. *Oppenheimer,* supra, dice a las páginas 87–8:

"En cuanto a los méritos la proposición del Gobierno es que la doctrina de cosa juzgada no existe en casos criminales excepto en la forma modificada de la Quinta Enmienda de que nadie podrá ser sometido, por el mismo delito, dos veces a juicio que pueda ocasionarle pérdida de la vida o de alguno de sus miembros;

Sin embargo la conclusión de que cosa juzgada como tal puede invocarse en casos criminales dista mucho de ser la contestación a su aplicación en casos específicos. De manera análoga al efecto de la alegación de exposición anterior en casos criminales, la alegación de cosa juzgada en casos civiles opera en muchos casos como impedimento (*bar*) o como fusión (*merger*). En tales casos la causa de acción original se extingue por la sentencia, y la alegación es fatal *in toto* al segundo caso. Bajo tales circunstancias la sentencia es concluyente aún en cuanto a todas las cuestiones que pudieron haber sido, pero que no fueron, de hecho litigadas y determinadas (*Sucn. Rivera v. Lugo*, 63 D.P.R. 14; *Laloma v. Fernández*, 61 D.P.R. 569; *Restatement, Judgments*, secciones 61, 68; Scott, *Collateral Estoppel by Judgment*, 56 Harv. L. Rev. 1, 2–3).

Pero la alegación de adjudicación previa tiene este gran alcance en casos civiles solamente si se interpone en un pleito posterior que envuelva la misma reclamación o causa de acción. Por tanto nunca puede producir tal resultado en un caso criminal precisamente porque la cosa juzgada concurre en un caso criminal solamente cuando un delito diferente está envuelto en el segundo caso. En dos palabras, se hace necesario recurrir a la cosa juzgada en casos criminales solamente cuando está envuelto un delito diferente y no el

y se infiere la conclusión de que una decisión proveniente de una alegación de impedimento (*in bar*) no puede evitar un segundo juicio cuando el acusado nunca ha estado expuesto por segunda vez en el sentido de estar ante un jurado por los hechos del delito imputado. Parece que el exponer meramente la posición constituiría su propia contestación. No es posible que los derechos de la persona, tantas veces correctamente mencionados con solemnes reverencias, sean menos que aquellos que le protegen de responsabilidad por una deuda. . . .
‘‘.      .      .      .      .      .      .      .      .

‘‘La garantía provista por la Constitución contra los más graves abusos ha tendido a dar la impresión de que cuando no era aplicable en sus términos, no podía aplicarse ningún otro principio. Pero la Enmienda Quinta no tuvo por miras burlarse de lo que en el derecho civil es un principio fundamental de justicia (*Jeter v. Hewitt*, 22 How. 352, 364). o sea, cuando una persona ya ha sido absuelta en los méritos, permitirle al Gobierno que lo procese por segunda vez.’’

mismo. Esto es así porque si el segundo caso envolviera el mismo delito, prevalecería la alegación de exposición anterior sin más.

Nuestro verdadero problema surge por tanto cuando tratamos de delinear los límites de cosa juzgada en un caso criminal según se aplica a un caso que trata de un delito diferente a aquel envuelto en el primer caso. En casos civiles que envuelven tales hechos la regla es que "cuando la acción posterior se basa en una causa de acción diferente a aquella sobre la cual la primera acción se basó, el efecto de la sentencia es más limitado. La sentencia es concluyente entre las partes en tal caso en cuanto a cuestiones de hecho litigadas y determinadas por la sentencia. No es concluyente en cuanto a cuestiones que pudieron pero que no se litigaron en la acción original. Esta es la doctrina de *estoppel* colateral".[6] "El término *estoppel* 'colateral' tiene por miras hacer hincapié en el hecho de que las causas de acción envueltas en los dos procedimientos son diferentes, aun cuando los puntos o algunos de ellos sean los mismos."[7]

Encontramos la regla para casos civiles expuesta por el Juez Asociado Sr. Roberts en *Tait* v. *Western Md. Ry. Co.,* 289 U. S. 620, 623: "El alcance del *estoppel* de una sentencia depende de si la cuestión surge en una acción posterior entre las mismas partes sobre la misma reclamación o demanda o sobre una reclamación o demanda diferente. En el primer caso una sentencia sobre los méritos es un absoluto impedimento (*bar*) a la acción posterior. En esta última el problema es determinar si el punto o cuestión a ser determinado en la segunda acción es el mismo que aquél litigado y determinado en la acción original. *Cromwell* v. *County of Sac.,* 94 U. S. 351, 352–353; *Southern Pacific R. Co.* v. *United States,* 162 U. S. 1, 48; *United States* v. *Moser,* 266 U. S. 236, 241. . . ."

---

[6] *Restatement, Judgments,* sección 68, *Comment a,* pág. 294.
[7] Scott, supra, a la pág. 3.

Este mismo limitado efecto de cosa juzgada desarrollado en los casos civiles se encuentra en los casos criminales. El Juez Asociado Sr. Brandeis lo expresa como sigue en *Collins* v. *Loisel,* supra, a la pág. 430: " . . . . al proveer contra la exposición anterior no se contempló que la Enmienda Quinta sustituiría el principio fundamental de cosa juzgada en casos criminales . . . Pero la sentencia sólo es cosa juzgada . . . en cuanto a los puntos de derecho y los hechos necesariamenté envueltos en dicho resultado". Esta limitación de la doctrina de cosa juzgada en casos criminales se ha observado cuidadosamente en un gran número de casos, muchos de los cuales pueden encontrarse en 147 A.L.R. 991, supra. Al mismo efecto, *United States,* v. *De Angelo,* 138 F. (2d) 466 (C.C.A. 3rd, 1943) ; *United States* v. *Halᵸbrook,* 36 F. Supp. 345 (Dist. Ct., Mo. 1941).

En el caso de *United States* v. *Morse,* 24 F. (2d) 1001 (Dist. Ct., S. D. N. Y. 1926), el Juez Thacher, después *Solicitor General* de los Estados Unidos y ahora Juez de la Corte de Apelaciones de Nueva York, al resolver una moción para anular una denuncia, empleó el siguiente lenguaje al exponer la regla: "La moción no puede prosperar como alegación *de autrofois acquit* como impedimento (*bar*) a la denuncia, porque los delitos imputados no son idénticos. . . Por tanto se presenta la sentencia en el caso anterior, no como impedimento (*bar*), sino como *estoppel* sobre el principio de que cuestiones de hecho o de derecho, suscitadas claramente y determinadas directamente por una corte de jurisdicción competente, no pueden después disputarse entre las mismas partes (citando casos).

"A este extremo la sentencia absolutoria, aún cuando se dictó en una denuncia que imputaba un delito diferente, opera como *estoppel* y, si dentro de su adjudicación, se encuentran hechos necesariamente decisivos en el caso ante nos, la denuncia pendiente debe anularse (citando casos). Pero, desde luego, no se puede anular debidamente la denuncia a menos

que el *estoppel* de la sentencia anterior excluya prueba de hechos necesarios para sostenérla''.

Muchos de los casos citan 2 Freeman *on Judgments* (5ª. Ed.) art. 648, págs. 1364–5, como sigue: ''No hay razón por la cual, bajo las debidas circunstancias, no deba darse a una sentencia definitiva en un caso criminal, efecto concluyente como *estoppel* o impedimento (*bar*). La misma política que dicta la regla en casos civiles la exige en casos criminales. . . Los principios aplicables a sentencias en casos criminales son, en general, idénticos, en tanto en cuanto está envuelta la cuestión de *estoppel*, a los principios reconocidos en casos civiles. . . Pero bajo tales circunstancias la sentencia anterior es concluyente solamente en cuanto a aquellas materias que de hecho se suscitaron y verdaderamente o por necesidad se adjudicaron. . .''

██ Resulta fácil resolver el presente caso al aplicársele estos bien establecidos principios. La adjudicación previa de inocencia en la corte municipal por el abandono del menor aquí envuelto durante 1941, no opera como impedimento (*bar*) por vía de exposición anterior a la prosecución de una denuncia posterior y diferente por un delito de la misma naturaleza, es decir, el no haber suministrado la manutención en 1942. ¿Pero levantó el acusado la cuestión de la paternidad entre él y el Pueblo en el primer caso y fué dicha cuestión o hecho adjudicado necesariamente para su absolución, teniendo ahora derecho a alegar que el Pueblo está *estopped* de relitigar esa misma cuestión en otro caso criminal imputándole bajo la misma ley el mismo delito, si bien por un período subsiguiente, siendo por tanto técnicamente un delito diferente?

El récord ante nos no demuestra específicamente los motivos por los cuales se absolvió al acusado en el primer caso. Por tanto, se podría conceblemente argüir que la cuestión de paternidad no fué necesariamente determinada en el primer caso. Por ejemplo, la defensa pudo muy bien ser que él

estaba manteniendo al menor, defensa que o fué creída por la corte municipal o levantó una duda razonable en cuanto a su culpabilidad.

En este caso específico no nos impresiona dicho argumento. Los artículos 2 y 3 de la Ley núm. 108, Leyes de Puerto Rico, 1940 (pág. 673), disponen que en tales casos el juez municipal deberá hacer un requerimiento formal al presunto padre para que proporcione la manutención. De conformidad con el artículo 4; el acusado debe comparecer dentro de ocho días y "aceptará o no la paternidad". El artículo 5 dispone que si se admite la paternidad, el caso se envía a la corte juvenil para procedimientos ulteriores. Hemos resuelto que la Ley núm. 108 significa que el requerimiento formal es una condición precedente a la prosecución, y que solamente de negarse la paternidad después del requerimiento formal, es que la corte municipal procede a celebrar el juicio, en la manera usual como si fuera un caso ordinario *misdemeanor*. *Pueblo* v. *Lamboy,* 59 D.P.R. 174; *Pueblo* v. *Ramos,* 61 D.P.R. 333, 336-7.

Por tanto no puede argumentarse en el presente caso que la cuestión de paternidad no fué necesariamente resuelta a favor del acusado en el primer caso bajo la teoría de que durante el juicio pudo haber admitido la paternidad pero negado el dejar de proveer manutención al menor, y que su absolución pudo por tanto resultar de haberse resuelto a su favor el segundo motivo. Si hubiera admitido la paternidad, la corte municipal, de conformidad con la Ley núm. 108, hubiera enviado el caso a la corte juvenil. Pero toda vez que la copia certificada de la sentencia de absolución demuestra que el caso fué visto en la corte municipal, forzoso es concluir que el acusado negó la paternidad. Y si él fué absuelto en un caso en que la negativa era el único punto presentado en el juicio, la corte municipal necesariamente tuvo que haber concluído que él no era el padre. Al decir esto, no pasamos por alto el argumento de que a pesar de negar la pa-

ternidad, concebiblemente el acusado pudo (*a*) haber estado manteniendo al menor, (*b*) haberlo así probado en su defensa, y (*c*) haber sido absuelto por dicho motivo. Pero sería puramente especulativa y no podría predominar bajo las circunstancias de este caso una resolución en este sentido sin base alguna en el récord de este caso específico que la sostenga. Tenemos ante nos solamente la negativa de paternidad, la denuncia por el abandono del menor y una absolución. Y la única cuestión que estamos seguros se levantó y litigó es la negativa de paternidad. Es más, el coloquio sobre este asunto entre el Juez y los abogados demuestra que todas las partes substancialmente admitieron que el primer caso se resolvió exclusivamente a base de la paternidad.[7a] Bajó dichas circunstancias, en vista de la disposición estatutaria de que el juicio se celebre en la corte municipal solamente en caso de que se niegue la paternidad, creemos que esta cuestión de paternidad era un hecho necesariamente envuelto en el caso, y que el acusado no podía, hasta donde demuestra el récord ante nos, haber sido absuelto bajo teoría alguna a no ser que el acusado no era el padre del menor. Por tanto concluímos que, bajo la doctrina de *estoppel* colateral establecida en los casos, la defensa de adjudicación anterior de este punto de hecho debió haber prevalecido en el presente caso.

Hemos encontrado solamente dos casos en que los hechos son algo parecidos a los del presente y en ambos la doctrina de cosa juzgada se invocó con éxito. En el de *Commonwealth*

---

([7a]) Al formular su alegación de exposición anterior, el abogado del acusado manifestó que (T. de R. pág. 50) ''. . . hemos encontrado que el acusado fué absuelto en la corte municipal de un del·to de abandono de menores cometido después de estar en vigor la ley de 1940 y que el acusado fué absuelto luego de oída la prueba y considerada la misma por sus méritos. . . .'' El fiscal de distrito replicó que ''. . . Si el acusado fué llevado ante la corte municipal con posterioridad al 1940 y el acusado fué absuelto habiendo *negado la paternidad*, nosotros entendemos que aún siendo así y aún admitiendo que el acusado compareció ante la corte municipal y ·fué absuelto, no cabría nunca la alegación de *former jeopardy* . . .'' La corté de distrito, resumiendo las alegaciones y las contenciones de las partes (T. de R. Pág. 50-53) indicó que de conformidad con el procedimiento provisto por la Ley 108, ''El acusado negó la paternidad'' en el presente caso. (Bastardillas nuestras.)

v. *Ellis*, 35 N. E. 773 (Mass. 1893), el acusado fué denunciado, por el delito de abandonar su hijo menor. Durante el juicio su defensa consistió en que el menor no era su hijo, sino hijo adulterino de su esposa. Para combatir esta defensa, el Pueblo presentó en evidencia el récord de la corte de distrito demostrando una convicción anterior y sentencia bajo la misma ley por el mismo delito, en cuanto al mismo hijo. La corte de distrito resolvió que el récord de la convicción y sentencia era evidencia concluyente en cuanto a la cuestión de paternidad, y que el acusado estaba *estopped* de alegar la supuesta ilegitimidad del menor como defensa. La Corte dijo: "La cuestión de paternidad del menor necesariamente estaba envuelta en la anterior convicción del acusado. Habiéndose determinado el hecho, no puede litigarse otra vez entre las mismas partes, a menos que a los procedimientos criminales se les aplique una regla diferente a la de los procedimientos civiles. Véase *Sly* v. *Hunt*, 159 Mass. 151, 34 N. E. 187, y casos citados. Es doctrina bien establecida que la regla es la misma en ambas clases de casos. . ."

En *People* v. *Mojado*, 70 P. (2d) 1015 (Calif., 1937), el acusado fué convicto bajo el artículo 270 del Código Penal de California por abandono de su hijo menor. La única cuestión en apelación consistió en si la corte inferior erró al admitir en evidencia el récord de la anterior convicción del apelante por un delito similar en relación con el mismo hijo, y al sostener una objeción a la oferta del apelante para probar que él no era el padre del menor. Al confirmar la sentencia la corte dijo a la página 1016: " . . . En este caso no podría haber convicción posterior en ausencia de la determinación judicial de que el apelante era el padre de este menor. La determinación de dicho hecho, reflejada en la sentencia, es inseparablemente parte de dicha convicción. . . . [8]

---

[8] Este caso no es enteramente aplicable, en vista de la expresa disposición de la ley de California allí envuelta de que tal convicción anterior puede alegarse y probarse en un caso posterior traído bajo las circunstancias de dicho caso. Sin embargo, el caso es interesante tanto por su resolución como por su reconoci-

No vacilamos en adoptar esta regla en esta jurisdicción. La política pública contenida en la doctrina de cosa juzgada es suficientemente fuerte y predominante para resistir las más elocuentes alegaciones de que no se aplique con el fin

miento implícito de que en California, cuyo Código Penal y Código de Enjuiciamiento Criminal hemos copiado, puede invocarse la cosa juzgada en casos criminales. En los casos de *People* v. *Housman,* 112 P. (2d) 944, 947 (Calif., 1941) y *People* v. *Ashrawy,* 19 P. (2d) 536 (Calif., 1933), las cortes nuevamente implican que la doctrina se aplica en California a casos criminales. Y en *People* v. *Johansen,* 226 Pac. 634 (Calif., 1924) la doctrina invocada en el presente caso en cuanto a delitos continuos se distingue por el fundamento de que en el caso de *Johansen* los hechos pudieron haber cambiado durante el intervalo entre las dos denuncias. Desde luego, dicha distinción no puede hacerse en cuanto a la cuestión de paternidad aquí envuelta. En nuestra búsqueda no hemos encontrado ningún otro caso de California sobre esta cuestión.

No nos preocupa el hecho de que cosa juzgada está definida solamente en el artículo 1204 de nuestro Código Civil, edición 1930, o que el artículo 162 de nuestro Código de Enjuiciamiento Criminal, edición 1937, copiado de California, señala solamente ''cuatro clases de alegaciones contra una acusación'', incluyendo la alegación de exposición anterior, pero ninguna alegación conocida como cosa juzgada. Aparentemente California y en verdad la abrumadora mayoría de los otros estados permiten no obstante tal defensa. En *Commonwealth* v. *Spivey,* 48 S.W. (2d) 1076 (Ky., 1932) la corte dijo a la página 1077: ''Se insiste primeramente por el Gobierno que bajo nuestro Código de Procedimiento Criminal no se hace disposición alguna para que la alegación de cosa juzgada descanse en el artículo 172 del Código de Procedimiento Criminal, que dice que sólo hay tres clases de alegaciones contra una acusación: (1) la de culpabilidad; (2) la de inocencia, (3) la de convicción o absolución anterior. Sin embargo, la alegación de cosa juzgada de poderse hacer en un caso criminal, es en realidad, al interponerse por el acusado, un elemento de la alegación de inocencia, debido a que de probarse, entonces el acusado debe ser declarado, como se hizo con el acusado en este caso, inocente del delito imputado. Somos de opinión que, al interponerse por el acusado, la alegación de cosa juzgada se puede hacer bajo la alegación de inocencia . . .''

En este caso no es necesario que entremos a considerar si la cosa juzgada en casos criminales debe caracterizarse y apuntarse técnicamente como una alegación separada, o si está contenida bajo la alegación general de inocencia. Se podría quizás argumentar que toda vez que, contrario a la alegación ordinaria de impedimento (*bar*), se dirige a puntos específicos más bien que al caso en su totalidad, puede levantarse por moción o bajo la alegación de inocencia. De cualquier modo, es suficiente decir en este caso que el acusado solicitó y obtuvo el permiso de la corte, sin oposición del Fiscal, para hacer una alegación formal —aunque, como hemos visto, erróneamente la tituló exposición anterior—en la que adujo todos los hechos y que la corte desestimó en los méritos (*cf. Pueblo* v. *Marrero,* 18 D.P.R. 923). Sin embargo, creemos oportuno añadir que en casos futuros los abogados deben interponer la defensa de cosa juzgada mediante una moción especial expresamente alegando tal defensa.

de evitar alegadas injusticias en casos individuales.[9] El hecho de que las cuestiones envueltas en la defensa de adjudicación anterior en un caso criminal disten algo de ser exposición anterior no nos debe llevar por tanto a diluir el incólume principio que se aplica a todos los casos, civiles o criminales, de que en un pleito en que las partes, los puntos, y la naturaleza de la causa son los mismos, la ley dispone que se determine solamente una vez, y nada más. Este principio está tan adentrado en la ley referente a casos civiles que huelgan los ejemplos. En el derecho penal vienen en seguida a nuestra mente los ejemplos. Se acusa a un individuo de adulterio. Su defensa es que él y la mujer envuelta son esposos. Sale absuelto. De continuar viviendo con la misma mujer, ¿quién podría decir que, por técnicamente diferente que sea el delito posterior, debe permitirse al Estado molestar al individuo con acusaciones posteriores que necesariamente tienen que estar basadas en un hecho ya resuelto contra el Estado en un caso similar que envolvía la misma acusación en que dicho hecho era de igual manera necesario para la determinación del caso? El mismo punto sería válido también si se intentara denunciar subsiguientemente a una persona por infringir la Ley Federal sobre Normas Razonables del Trabajo, después de haber sido absuelto, cuando la única defensa consistió en que el negocio del acusado no estaba cubierto por dicha ley; o si el acusado fuera perseguido nuevamente por violación de la Ley Federal que prohibe la transportación de armas de fuego en el comercio interestatal por una persona convicta anteriormente de un delito de violencia, después de haber sido absuelto en un caso en que el acusado sólo levantó la cuestión de que nunca había sido convicto anteriormente de un delito de violencia.[10]

---

(9) En verdad, nada demuestra mejor cuán rigurosamente funciona dicha política que la regla de que los derechos de las mismas partes que envuelven la misma causa de acción están resueltos para siempre aún en una decisión obtenida por empate, lo que podría parecer al lego que no es decisión alguna. *Junta Insular de Elecciones* v. *Corte de Distrito*, 63 D.P.R. 819.

(10) Todos estos ejemplos están predicados en la premisa de que, contrario

Escasamente tenemos que añadir que una sentencia en un caso criminal, aun en cuanto a los hechos necesariamente determinados en el mismo, no es impedimento (*bar*) por el fundamento de cosa juzgada a una acción civil posterior basada en los mismos hechos. Lo contrario es desde luego igualmente cierto. La doctrina no podría aplicarse en dichas situaciones debido a la diferencia en las partes y en el grado de la prueba requerida en casos civiles y criminales. *Helvering* v. *Mitchell,* supra, a la pág. 397; von Moschzisker, supra, a las págs. 325–326. Aquí la absolución en el primer caso criminal no operaría por ejemplo en el sentido de que la cuestión de paternidad sea cosa juzgada en una acción civil posterior de filiación. Véase *State* v. *Morrow,* 75 P. (2d) 737 (Ore., 1936). *Cf. Ortiz* v. *Viera,* 61 D.P.R. 514.

En este caso tampoco tenemos que resolver la cuestión de si la alegación de cosa juzgada podría interponerse con éxito en cuanto a un punto de hecho ya litigado en un caso anterior cuando el segundo caso contra el mismo acusado envuelve un alegado delito de diferente naturaleza bajo una ley distinta. Aquí sólo resolvemos que cosa juzgada evita una denuncia posterior por el mismo delito continuo cuando el acusado ha sido absuelto previamente por la misma acusación por hechos ocurridos durante un período anterior, si en el primer caso debido a su absolución necesariamente tuvo que determinarse a favor del acusado una cuestión de hecho, cuestión que tiene indispensablemente que resolverse en su contra para poder hallarlo culpable en el segundo caso.

Es innecesario que examinemos los numerosos otros errores señalados por el acusado debido al resultado a que hemos llegado.

*La sentencia de la corte de distrito será revocada y se dictará nueva sentencia absolviendo al acusado.*

---

al caso de *Johansen,* los hechos fundamentales no sufrieron cambio alguno en el intervalo entre las dos denuncias.