ARNALDO POL SELLA, demandante y recurrente, *v.* AUREA LUGO CHRISTIAN y ARNALDO LUGO o ARNALDO POL, demandados y recurridos.

*Número:* R-78-161        *Resuelto:* 18 de septiembre de 1978

*Hernán Longoria,* abogado del recurrente; *Apolo García Vilanova,* abogado de los recurridos.

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del Tribunal.

Este pleito concierne a la finalidad de la determinación de paternidad que por disposición del Art. 263 del Código Penal (hoy Art. 158 del Código Penal de 1974) hace el juez sentenciador en los casos por abandono de menores. El carácter exclusivamente penal que hasta ahora se ha venido atribuyendo a esta denuncia la sujeta a los efectos del Art. 2 del antiguo Enjuiciamiento Civil en su provisión de que "cuando la violación de un derecho permita el ejercicio de ambas acciones, la civil y la criminal, el derecho de ejercer la una no impide el derecho de ejercer la otra." (32 L.P.R.A. sec. 2.) La vigente situación procesal deja en precario la sentencia del caso criminal, aún después de haber ésta alcanzado la calidad de final y firme, disminuye el valor de la absolución del padre denunciado a pesar de fundarse la misma en los méritos de la

prueba que excluye la paternidad; y para el llamado hijo natural que prevalece, obligado a revalidar su filiación en un segundo día en corte, representa un residuo del fardo histórico que por generaciones abrumó su debilidad y desamparó y entorpeció el reclamo de su derecho.

El recurrente Pol Sella fue procesado ante el Tribunal de Distrito, Sala de San Germán, por el delito de abandono de menores bajo el entonces vigente Art. 263 del Código Penal (33 L.P.R.A. sec. 991) (¹) en que se le imputaba la paternidad del menor Arnaldo Lugo, nacido el 15 de noviembre de 1972. Después del juicio el tribunal encontró al acusado culpable y dictó sentencia imponiéndole 60 días de cárcel, la cual suspendió a condición de que el convicto suministrara a su hijo una pensión alimenticia de $15.00 semanales. El acusado

---

(¹) Art. 263, Código Penal de 1937

"(a) Todo padre o madre que voluntariamente y sin excusa legal dejare de cumplir con la obligación que la ley le impone de proveerles alimentos a sus hijos, incurrirá en delito menos grave.

"(b) Cuando la paternidad se acepte por el denunciado ante el Tribunal antes de comenzar el juicio, o cuando no esté en controversia, se celebrará el juicio, y de resultar el denunciado culpable de abandono, el Tribunal fijará mediante resolución una suma razonable por concepto de alimentos, apercibiendo al acusado que el incumplimiento de dicha resolución, sin excusa legal, podrá ser castigado como un desacato civil.

"(c) Cuando se niegue la paternidad, el Tribunal dará un plazo de no más de diez (10) días al acusado para que conteste la alegación al efecto, e inmediatamente celebrará un juicio en el cual se seguirán las reglas para la presentación de evidencia vigentes. Dentro del quinto día de haberse oído la prueba el juez resolverá sobre la paternidad y de resultar probada ésta, levantará un acta al efecto y dictará la resolución correspondiente fijando, además, la cuantía que por concepto de alimentos deberá proveerle al hijo.

"(d) Luego de los procedimientos preliminares que se establecen en los dos incisos anteriores, el caso continuará ventilándose a base de las alegaciones de abandono y el fallo recaerá sobre este extremo. El Tribunal tendrá discreción para suspender los efectos de la sentencia si lo creyere necesario para el bienestar del menor. Del fallo adverso sobre paternidad y sobre abandono el acusado podrá apelar en un solo acto. Las vistas sobre estos casos tendrán preferencia en los calendarios de los Tribunales de Apelación.

"(e) La apelación para ante el Tribunal Superior de cualquier sentencia u orden dictada bajo esta sección, no suspenderá los efectos de la reso-

apeló al Tribunal Superior que desestimó su recurso por no ajustarse a la Regla 216 de Procedimiento Criminal, ([2]) y de dicha decisión recurrió a este Tribunal Supremo que denegó *certiorari* el 19 de abril de 1974. El juez de primera instancia en cumplimiento del citado Art. 263 del Código Penal, inciso (f), dictó orden y resolución sobre su determinación de paternidad que remitió al Registro Demográfico, en el cual Arnaldo Lugo quedó inscrito como hijo de Arnaldo Pol Sella.

Ya final y firme la sentencia, en mayo de 1976 el padre presentó demanda titulada "acción civil" ante la Sala de Mayagüez contra Arnaldo Pol Lugo y su señora madre en la

---

lución ordenando el pago de alimentos; Disponiéndose, que en tal caso de apelación el acusado vendrá obligado a depositar en la Secretaría de la Sala del Tribunal Superior para ante el cual se haya apelado las cuantías fijadas por concepto de alimentos, pero no se dispondrá de éstas hasta que recaiga el fallo en dicha Sala. Si el acusado dejare de cumplir con la consignación dispuesta, el Tribunal desestimará la apelación.

"(f) Cuando fuere firme la sentencia, el Tribunal dictará orden acompañada de copia certificada del acta de aceptación de la paternidad o de la determinación de paternidad hecha por el juez, dirigida al encargado del Registro Demográfico, para que proceda a inscribir al menor como hijo del acusado con todos los demás detalles requeridos por el acta de nacimiento, para todos los efectos.

"(g) En todas las acciones por infracciones a esta sección, incluso en las vistas sobre incumplimiento de la orden de alimentar, el interés público estará representado por un fiscal de distrito, su auxiliar o cualquier fiscal especial designado por el Secretario de Justicia, su auxiliar, o un fiscal especial privado designado según dispone la sec. 102 del Título 3 de las Leyes de Puerto Rico Anotadas.

"(h) A los efectos de determinar la paternidad, el Tribunal de Distrito tiene jurisdicción concurrente con el Tribunal Superior de Puerto Rico."

El delito se define y sanciona en el Art. 158 del Código Penal de 1974 (33 L.P.R.A. sec. 4241) siguiendo el mismo procedimiento ordenado del anterior Art. 263, bajo el nuevo nombre de "Incumplimiento de la obligación alimenticia."

([2])Al denegar la moción de reconsideración del apelante el Juez Vizcarrondo Vivas (Mayagüez) se expresó así: "Solo nos resta decir que la prueba resumida en la relación del caso sostiene ampliamente la determinación de paternidad y la sentencia condenatoria dictada, aunque considerando la conducta contumaz del acusado entendemos que el Tribunal recurrido debió haber impuesto una sentencia más severa al acusado." En consecuencia aumentó de 60 días, a 6 meses la pena de reclusión.

que pide una determinación de que él no es padre del referido menor de edad y que se elimine su nombre de la inscripción practicada en el Registro Demográfico.(³) A esta demanda opusieron los demandados la defensa de cosa juzgada, y al desestimar la acción civil la sala de instancia ahora por voz de su Juez Waldo Santiago fundamentó su decisión así:

"... Permitir la presente acción judicial—atendido el marco de referencia fáctico y jurídico consignado en el curso de ésta—tendría el efecto de derrotar los fines de la justicia y el interés del Estado en la disposición final y terminación de los litigios. *G.A.C. Finance Corp.* v. *Rodríguez,* 1974, 102 D.P.R. 213. De nada puede quejarse el demandante, pues tuvo su día en corte e hizo el uso máximo de los recursos apelativos y de revisión a su disposición *León* v. *Colón,* 42 D.P.R. 22. El presente pleito impresiona como un sustituto del remedio de apelación que agotara el demandante y que le resultara adverso. Ello no es permitido. *O. Parés, Inc.* v. *Galán,* 98 D.P.R. 772. Habiendo sido ya consagrada oficialmente la filiación del menor a que se refiere la presente acción, no existe controversia ni incertidumbre en tal sentido a ser resuelta en una acción civil y por el contrario el permitirse podría en su relitigación resultar académica o crear un estado de incertidumbre y/o controversia que al presente no existe."

---

(³) El conciso texto de la demanda comprende las siguientes alegaciones:

"Que la demandada Aurea Lugo Christian es mayor de edad y madre con patria potestad y custodia sobre el co-demandado menor de edad Arnaldo Lugo o Arnaldo Pol.

"Que en el Registro Demográfico de San Germán, Puerto Rico, se ha inscrito el nacimiento del co-demandado niño Arnaldo Lugo por la demandada Aurea Lugo Christian donde se ha consignado que el padre de dicho niño es el demandante Arnaldo Pol Sella.

"Que dicho niño no es hijo del demandante Arnaldo Pol Sella por lo que la constancia obrante en el acta de nacimiento de dicho niño en el sentido de que el demandante es su padre es contraria a los hechos y a derecho.

"Que el demandante expresamente impugna la paternidad de dicho niño por lo que de este Hon. Tribunal suplica que en su día y previo los trámites de ley al efecto se sirva declarar que el demandante no es el padre del co-demandado menor Arnaldo Lugo o Arnaldo Pol y se ordene al Señor Registrador Demográfico General de Puerto Rico que elimine del acta de nacimiento de dicho niño el nombre del demandante como padre del menor para todos los efectos de ley pertinentes."

Expedimos el auto de revisión por el aparente conflicto de la sentencia recurrida con la siguiente doctrina de *Pueblo* v. *Lugo*, 64 D.P.R. 554, 567 (1945):

"Escasamente tenemos que añadir que una sentencia en un caso criminal, aun en cuanto a los hechos necesariamente determinados en el mismo, no es impedimento (*bar*) por el fundamento de cosa juzgada a una acción civil posterior basada en los mismos hechos. Lo contrario es desde luego igualmente cierto. La doctrina no podría aplicarse en dichas situaciones debido a la diferencia en las partes y en el grado de la prueba requerida en casos civiles y criminales. [Citas.] Aquí la absolución en el primer caso criminal no operaría por ejemplo en el sentido de que la cuestión de paternidad sea cosa juzgada en una acción civil posterior de filiación."

■ El Art. 263 del Código Penal sufrió una transformación radical por Ley Núm. 10 de 16 mayo, 1966 (33 L.P.R.A. sec. 991) que lo convirtió en precepto de carácter mixto penal y civil. Hasta entonces era sanción por el acto de negar los alimentos a un hijo, sin excusa legal y la prueba de paternidad se requería sólo para establecer uno de los elementos del delito. La modificación de 1966 amplió el ámbito y el propósito del citado artículo incorporando un procedimiento en el cual la paternidad probada crea un nuevo estado civil del menor y una filiación que se anota en el Registro Demográfico. Por el inciso (h) del citado artículo se concedió al Tribunal de Distrito jurisdicción *concurrente* con el Tribunal Superior "a los efectos de determinar la paternidad"; y por el inciso (f) se equiparó el procedimiento, en el eficaz ejercicio de esa jurisdicción, al de la tradicional acción civil filiatoria, en su mandato de que una vez firme la sentencia el Tribunal de Distrito "dictará orden acompañada . . . de la determinación de paternidad hecha por el juez, dirigida al encargado del Registro Demográfico, para que proceda a inscribir al menor como hijo del acusado con todos los demás detalles requeridos por el acta de nacimiento, *para todos los efectos*." (Énfasis suplido.)

El historial legislativo destaca el nuevo perfil de acción civil impartido al Art. 263 por dicha Ley Núm. 10 de 1966 y que se manifiesta en la disposición fundamental que confiere al Tribunal de Distrito jurisdicción concurrente con el Superior para determinar paternidad, un concepto que ya para 1963 *Ocasio* v. *Díaz*, infra, había equiparado jurídicamente al de filiación. Informe de la Comisión de lo Judicial de la Cámara de Representantes, Servicio Legislativo de Puerto Rico 1966 Núm. 2, pág. 107.

Desde su reforma en 1966 dejó de ser el Art. 263 del Código Penal objeto de la norma de dualidad de ejercicio en las esferas penal y civil. Desde entonces la determinación de paternidad a tenor de dicho precepto tiene el valor y la autoridad de la filiación ganada en la acción civil clásica ante el Tribunal Superior. Cuando se resuelve *Pueblo* v. *Lugo*, supra, en 1945, manteniendo la separación e independencia de las acciones, el Art. 263 del Código Penal no generaba consecuencia alguna en el estado civil del menor por ser ésta provincia exclusiva de la acción civil filiatoria a tenor del Art. 125 del Código Civil y de la Ley Núm. 229 de 12 mayo, 1942 (31 L.P.R.A. secs. 501–504). Existía una patente diferenciación técnica entre la "paternidad", elemento integrante del delito de abandono de menores; y la "filiación" regulada puntillosamente en sus requisitos de prueba, a saber, escrito indubitado del padre, posesión continua del estado de hijo natural, concubinato y prueba "auténtica" de paternidad. La Constitución de 25 de julio de 1952 y la "Ley para establecer la igualdad de derechos de los hijos", que es la Ley Núm. 17 de 20 de agosto, 1952 abolieron toda diferencia conceptual entre *filiación* y *paternidad. Ocasio* v. *Díaz*, 88 D.P.R. 676 (1963). En *Ocasio* declaramos derogados los requisitos de prueba del Art. 125 del Código Civil e inoperante toda ley o sentencia que restrinja o reduzca el derecho dimanante de la condición de hijo. Desapareció el absurdo de una declaración de paternidad sin más consecuencia jurídica que el pago de una pen-

sión alimenticia. Sostuvo este Tribunal en *Ocasio* que "carece de validez toda disposición estatutaria y toda sentencia, decreto o fallo judicial que ... únicamente le conceda, reconozca o atribuya al estado de hijo de un ser humano, nada más que parte de los derechos unitarios de que disfruta el hijo llamado legítimo" y que "si procede declararse comprobado satisfactoriamente el hecho de la paternidad, el estado de hijo debe reconocerse a todos los efectos legales, es decir, con los mismos derechos que tiene un hijo legítimo, sin excepción o limitación alguna." ([4]) *Ibid.*, págs. 732–733.

Hay, por tanto, en la acción civil que ahora revisamos, identidad de causa con la promovida en el llamado caso criminal. ([5]) La distinción de mayor relieve entre la acción civil y la criminal reside en el diferente grado de prueba exigido para una determinación. Toda razón favorece la defensa de cosa juzgada cuando ha habido convicción en un proceso criminal previo o se ha rechazado la paternidad por sentencia en el pleito civil. En ambos casos la determinación judicial previa es digna de la calidad de cosa juzgada toda vez que a ella se llegó satisfaciendo el peso de la prueba en las circunstancias más favorables a la parte contra quien se invoca. La paternidad del recurrente Pol Sella fue adjudicada más allá de toda duda razonable. Sería no sólo inconsistente con el principio de finalidad, sino empresa fútil permitirle atacar aquella determinación en una acción civil donde sólo la preponderancia de la prueba basta. ([6])

---

([4]) Coincide con la frase "para todos los efectos" que gobierna la inscripción del menor como hijo del acusado, ordenada por el Art. 263 (f) del Código Penal de 1937.

([5]) Para que la presunción de cosa juzgada surta efecto en otro juicio, es necesario que entre el caso resuelto por la sentencia y aquél en que ésta sea invocada, concurra la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron. Art. 1204 del Código Civil (31 L.P.R.A. sec. 3343).

([6]) No es necesario resolver ahora sobre el valor de *res judicata* de la absolución de un padre en el caso criminal que puede deberse a no haber la prueba alcanzado el grado que derrota la presunción de inocencia y ex-

■ Podría llegarse también a la conclusión de que hay identidad entre las personas de los litigantes y la calidad con que lo fueron si consideramos que la parte realmente interesada tanto en la declaración de estado civil que comprende el Art. 263 del Código Penal, como en la nueva acción impugnatoria de la paternidad, lo es el menor Arnaldo Pol Lugo. En el caso por abandono de menores y específicamente en el procedimiento dirigido a establecer la paternidad, el Estado no suplanta al menor como parte, (⁷) sino que actúa en auxilio y para beneficio de éste, figura que también se da, entre otros casos, en la subrogación del Administrador del Fondo del Seguro del Estado en favor del obrero lesionado por un tercero; en las reclamaciones de salarios del Secretario del Trabajo para beneficio del trabajador; en la acción de triple daño por el Administrador de Servicios al Consumidor en provecho del inquilino y del propio Estado autorizada por el Art. 8 de la Ley de Alquileres Razonables (17 L.P.R.A. sec. 188); y en la interposición del *quo warranto* a instancias del relator. (32 L.P.R.A. sec. 3392.)

El ámbito de impacto del principio de cosa juzgada se ha extendido a la par con el contemporáneo énfasis en la política de obtener una adjudicación final de los litigios con razonable prontitud y limitación de costos. "Indudablemente, si una sentencia careciera de finalidad respecto al objeto de sus determinaciones, el proceso adjudicativo fracasaría en su función social de resolver disputas." (⁸) La expansión del con-

---

cluye toda "duda razonable" sobre la paternidad, y que hubiese producido un resultado distinto de haber sido la evidencia evaluada bajo la norma de preponderancia de prueba que gobierna la acción civil.

(⁷) El antes mencionado Informe de la Comisión de lo Judicial de la Cámara dice que "el propósito de la medida es el de crear el procedimiento que debe seguirse en los Tribunales de Distrito . . . creando mecanismos auxiliares para establecer la paternidad y la cuantía de alimentos", remedio típicamente civil de interés personal del menor, a diferencia de la acción punitiva típica del campo penal.

(⁸) Prof. David P. Currie, *Res Judicata: The Neglected Defense,* 45 U. Chi. L. Rev., No. 2, pág. 325 (1978).

cepto de *identidad* de partes más allá de la regla de *mutualidad* fue reconocida por el Juez Traynor desde 1942 al expresar: "Las exigencias del debido proceso de ley prohiben la alegación de cosa juzgada contra una *parte* . . . a menos que ésta fuere parte original o se hallare en relación mutua (*privity*) con otra . . . . No hay razón apremiante, sin embargo, para requerir de la parte que *promueve* la alegación de cosa juzgada que haya sido a su vez parte, o partícipe en mutualidad con otra en el pleito anterior." (Énfasis nuestro.) *Bernhard* v. *Bank of America Nat. Trust & Sav. Ass'n,* 19 Cal.2d 807, 812; 122 P.2d 892, 894 (1942).

■ También sería obstáculo a la acción civil del recurrente la regla de *estoppel* colateral por sentencia, toda vez que está impedido de relitigar el hecho de la paternidad, explícitamente promovido y adjudicado en el caso por abandono de menores. *Pereira* v. *Hernández,*(⁹) 83 D.P.R. 160, 166 (1961); *Rodríguez* v. *Albizu,* 76 D.P.R. 631, 636 (1954).

■ Se propicia una mejor administración de justicia con un procedimiento orientado hacia la integración contrapuesta a la fragmentación, principio este que gobierna las Reglas, y que este Tribunal ha ampliado en decisiones recientes admitiendo en el pleito civil por daños la sentencia recaída en el caso criminal relacionado (*Toro Lugo* v. *Ortiz Martínez,* 105 D.P.R. 229 (1976)); prohibiendo la ulterior discusión de la validez de una orden de allanamiento en caso distinto si anteriormente se había decretado su nulidad (*Pueblo* v. *Ortiz Marrero,* 106 D.P.R. 140 (1977)) y reconociendo en la absolución dictada en el caso criminal virtualidad excluyente de la confiscación (*Carlo* v. *Secretario de Justicia,* 107 D.P.R. 356 (1978)). La excepción de cosa juzgada, como la de impe-

---

(⁹) "Cuando un hecho esencial para el pronunciamiento de una sentencia se dilucida realmente y se determina por una sentencia válida y final, tal determinación es concluyente en un segundo pleito entre las mismas partes aunque estén envueltas causas de acción distintas. Esta doctrina del impedimento colateral ha sido aplicada en varias acciones. [citas]." *Ibid.,* pág. 166.

dimento colateral, imparte a la sentencia la eficacia y autoridad que constituyen una suprema exigencia del orden y de la seguridad que han de imperar en la vida social, de peculiar valía en la cuestión de paternidad cuya cualidad especial de indivisible se opone a la existencia de fallos contradictorios. *Cf.* Sentencia del Tribunal Supremo de España 7 julio, 1943: *Lausell Marxuach* v. *Díaz de Yáñez,* 103 D.P.R. 533 (1975).

■   El estado actual de procedimiento brinda al menor de edad reclamante de filiación y alimentos una dualidad de remedios integrada por la acción civil ordinaria bajo el Art. 125 del Código Civil, según modificado por legislación de 1942 y 1945 (31 L.P.R.A. secs. 501–504), y la denuncia por abandono de menores, redesignado el delito hoy como "Incumplimiento de la obligación alimenticia." (Art. 158, Código Penal de 1974 (33 L.P.R.A. sec. 4241).) En el primer caso puede prevalecer por preponderancia de prueba; en el segundo, deberá derrotar la presunción de inocencia, excluyendo la duda razonable.

El recurrente alega que no incurrió en temeridad al deducir esta acción civil, y así lo estimamos pues descansó en el Art. 2 del Enjuiciamiento, y en la doctrina de *Pueblo* v. *Lugo,* supra, en parte sostenida en *López Rivera* v. *Matos,* 101 D.P.R. 740, 750 (1973), radicalmente variada en esta opinión.

*Se dictará sentencia eliminando la condena en honorarios de abogado. Así modificada, la de instancia será confirmada.*