EL PUEBLO DE PUERTO RICO, recurrente, *v.* JUAN ANTONIO CORTÉS RIVERA, recurrido.

*Número:* CC-98-220          *Resuelto:* 28 de enero de 1999

*Carlos Lugo Fiol, Procurador General, Edda Serrano Blasini, Subprocuradora General,* y *Rose Mary Corchado Lorent, Procuradora General Auxiliar,* abogados de El Pueblo, peticionario; *José Padilla Torres,* abogado del recurrido.

EL JUEZ PRESIDENTE SEÑOR ANDRÉU GARCÍA emitió la opinión del Tribunal.

Nos corresponde determinar si el Tribunal de Circuito de Apelaciones erró al resolver que tres (3) cargos imputados a Juan Antonio Cortés Rivera por infracciones al Art. 105 del Código Penal de Puerto Rico (actos lascivos), 33 L.P.R.A. sec. 4067, constituían una sola infracción a la ley en virtud de la figura de continuidad delictiva.

I

El Ministerio Público acusó a Juan Antonio Cortés Rivera de tres (3) cargos por actos lascivos e impúdicos come-

tidos contra una menor de doce (12) años de edad. Art. 105 del Código Penal de Puerto Rico, *supra*. Los cargos especificaban hechos similares y las fechas en que fueron cometidos, según alega el Ministerio Público. El primer cargo señaló el 26 de abril de 1994 como la fecha exacta de la comisión de los actos delictivos. El segundo y tercero especificaron las fechas aproximadas de "entre los meses de julio a septiembre de 1993" y "entre los meses de octubre a diciembre de 1993", respectivamente. Celebrado el juicio por tribunal de derecho, el foro sentenciador halló culpable a Cortés Rivera y lo sentenció a cumplir de forma consecutiva ocho (8) años de prisión por cada cargo, para un total de veinticuatro (24) años de prisión. Inconforme con esta determinación, Cortés Rivera apeló ante el Tribunal de Circuito de Apelaciones. Ese foro apelativo (Circuito Regional VII, Carolina-Fajardo) modificó la sentencia que le fue impuesta en instancia por entender que se había cometido un solo delito.[1] De este modo, el foro apelativo estimó que los tres (3) cargos imputados a Cortés Rivera jurídicamente constituían un delito continuado cometido en pluralidad de acciones. Por ello, devolvió el caso al foro de instancia para que emitiera la sentencia por una sola infracción al Art. 105 del Código Penal, *supra*.

De esta determinación, el Ministerio Público acudió ante este Tribunal mediante un recurso de *certiorari*, en el que le imputó al foro apelativo haber errado al resolver que los actos delictivos por los cuales fue procesado Cortés Rivera no pueden ser sancionados individualmente.

Vista la comparecencia del Procurador General, concedimos a Cortés Rivera un término de veinte (20) días para que mostrara causa por la cual no debíamos expedir el auto solicitado y revocar la sentencia recurrida. El imputado así lo hizo. De tal modo, con la comparecencia de las partes y

---

[1] Notamos que la decisión recurrida ante nos fue incorrectamente titulada como "resolución". Lo cierto es que se trata de una sentencia, pues el foro apelativo adjudicó todas las controversias que le fueron planteadas en el recurso de apelación. Regla 43.1 de Procedimiento Civil, 32 L.P.R.A. Ap. II.

evaluados los argumentos de derecho presentados ante nos, resolvemos según lo intimado.

## II

■   El delito continuo o continuado puede definirse como una pluralidad de actos que aisladamente pudieran concebirse como delitos independientes, pero que en conjunto se conciben como un delito único. Véanse: S. Mir Puig, *Derecho Penal: Parte General*, 4ta ed., Barcelona, Ed. P.P.U., 1996, pág. 656; A. Arroyo de las Hieras, *Manual de Derecho Penal*, Pamplona, Ed. Aranzadi, 1985, pág. 267; E. Cuello Calón, *Derecho Penal*, 18va ed., Barcelona, Ed. Bosch, 1981, T. I, Vol. II, pág. 687; J.M. Rodríguez Devesa, *Derecho Penal Español*, 8va ed., Madrid, s. Ed., 1981, pág. 808; M.T. Castiñeira, *El delito continuado*, Barcelona, Ed. Bosch, 1977, pág. 15; F. Puig Peña, *Derecho Penal*, 5ta ed., Barcelona, Ed. Desco, 1959, T. II, pág. 301.

En sus orígenes, esta figura jurídica fue elaborada para evitar la imposición de la pena de muerte al autor de tres (3) o más hurtos. Véanse: *Código Penal Español Comentado*, Madrid, Ed. Akal, 1990, pág. 202; J.M. Luzón Cuesta, *Compendio de derecho penal; parte general*, 2da ed., Madrid, Ed. Dykinson, pág. 252. Aún hoy, para algunos constituye una figura jurídica que tiene el objetivo benévolo de atenuar la pena del imputado. Para otros, particularmente en la doctrina alemana, es una figura jurídica que encuentra su fundamento en necesidades prácticas, ya que mediante ella se superan dificultades probatorias, al ignorarse las fechas exactas de los distintos episodios que conforman el delito continuado y al permitir eludir las reglas en torno al concurso de delitos.[2] A. Quintano Ripo-

---

[2] Sobre este último aspecto se destaca que:

"El mecanismo del delito continuado es de por sí considerado por la doctrina como una *ficción* destinada a eludir las reglas concursales que el Código penal contiene, en especial la referente al concurso real homogéneo de delitos, así como el sistema de cuantías imperante en los delitos contra la propiedad antes de la Reforma

lles, *Curso de Derecho Penal*, Madrid, Ed. Rev. Der. Privado, 1963, T. 1, pág. 260; Quintero Olivares y Muñoz Conde, *op. cit.*, pág. 106; Cuello Calón, *op. cit.*, pág. 698.

En *Pueblo v. Burgos*, 75 D.P.R. 551, 568 (1953), definimos el delito continuado como "una transacción o una serie de actos continuos puestos en movimiento por un solo impulso y operados por una sola fuerza no intermitente, no importa cuán largo sea el tiempo que pueda ocupar". En esa ocasión, con apoyo en varios tratadistas y en jurisprudencia estadounidense, destacamos que procede una sola acusación cuando sólo hay un impulso entre la serie de actos involucrados, independientemente del tiempo transcurrido entre éstos. Por otro lado, afirmamos que proceden acusaciones separadas si se dan impulsos sucesivos de forma independiente, aun cuando esos impulsos sucesivos puedan converger en una corriente común de acción. Íd. Véanse, además: *Pueblo v. Serrano Pagán*, 85 D.P.R. 684 (1962), por operar una banca de bolita; *Pueblo v. Lugo*, 64 D.P.R. 554 (1945), por incumplimiento de la obligación alimentaria, fue modificado en otros extremos; *Pueblo v. Meléndez Cartagena*, 106 D.P.R. 388 (1977); D. Nevares-Muñiz, *Derecho Penal Puertorriqueño*, 3ra ed. rev., Hato Rey, Ed. Inst. Desarrollo del Derecho, 1983, pág. 328. Recientemente, en *Pueblo v. Carballosa y Balzac*, 130 D.P.R. 842 (1992), retomamos la discusión en torno a los delitos continuos y resolvimos que la acusación por infracción al Art. 212 del Código Penal, 33 L.P.R.A. sec. 4363 (oferta de soborno) allí involucrada, comprendía un solo delito ya que

> ... la serie de actos alegadamente realizados por los recurridos violentaron una misma disposición penal y estuvieron dirigidos a alcanzar un mismo fin o designio criminal, aun cuando cada uno de estos actos, de haberse realizado aisladamente y de

de 1983. Por tanto, el delito continuado, acuñado jurisprudencialmente, ha venido comportando una *contrariedad formal* a las reglas de acumulación de penas en el concurso de delitos." (Énfasis en el original.) G. Quintero Olivares y F. Muñoz Conde, *La Reforma Penal de 1983*, Barcelona, Ed. Destino, 1983, pág. 106.

forma independiente, hubiesen podido ser juzgados como un delito distinto. *Pueblo v. Carballosa y Balzac*, supra, pág. 856.

■ En su vertiente procesal, el delito continuado o continuo impide el procesamiento fragmentario. Véase Nevares-Muñiz, *op. cit.*, pág. 330.

■ Ahora bien, en *Pueblo v. Burgos*, supra, aunque destacamos la importancia de la intención legislativa y de las palabras del estatuto involucrado para hacer una determinación de continuidad, reconocimos las dificultades que entraña establecer una regla fija que permita precisar cuándo un delito es continuo. Las dificultades se tornan más evidentes ante el hecho de que en nuestra jurisdicción, distinto a otras, no existe una disposición que regule de forma específica esta figura.

En la doctrina civilista existen diversos esquemas que pretenden precisar las circunstancias según las cuales nos encontramos ante un delito continuado. Por un lado, se encuentran las teorías subjetivas, también conocidas como restrictivas, las cuales, en esencia, plantean que la continuidad proviene "de la intención unitaria del agente". Rodríguez Devesa, *op. cit.*, pág. 811; Castiñeira, *op. cit.*, págs. 29–30; Puig Peña, *op. cit.*, págs. 304–306. Esta es la tendencia prevaleciente en la doctrina italiana.

Por otro lado, se encuentran las teorías objetivas, favorecidas en la doctrina alemana, según las cuales la continuidad se determina "sobre la base de las circunstancias que objetivamente concurren a la comisión del hecho"; ya que quienes postulan estas teorías estiman que "la voluntad unitaria del autor es difícil de averiguar e irrelevante para el Derecho".[3] Rodríguez Devesa, *op. cit.*, pág. 811. Una tercera vertiente ecléctica postula que es necesario

---

[3] De acuerdo con este esquema subjetivo se ha señalado que es necesario examinar los elementos siguientes: (1) unidad de resolución en el sujeto activo; (2) unidad de disposición legal infringida, y (3) pluralidad de acciones. Según el esquema o sistema objetivo se examina si existe: (1) unidad de ocasión; (2) similitud del tipo; (3) unidad del bien jurídico lesionado, y (4) homogeneidad en la ejecución. F. Puig peña, *Derecho Penal*, 5ta ed., Barcelona, Ed. Desco, 1959, T. II, págs. 304–305.

examinar varios requisitos tanto objetivos como subjetivos.(4)

En Puerto Rico, conforme a nuestros previos pronunciamientos, prevalece la tendencia subjetiva, conforme a la cual es preciso examinar la intención del agente actor para determinar si en la serie de actos subsistió un único designio común. Con lo anterior en mente, examinemos los hechos del caso.

## III

Un examen de la exposición estipulada de la prueba testifical que desfiló en el foro de instancia revela que, contrario a la apreciación del foro apelativo, los actos por los cuales Cortés Rivera fue procesado carecían del elemento de unidad de resolución o intención que en el pasado hemos concebido como imprescindible en los delitos continuados. El Tribunal de Circuito de Apelaciones, por su parte, enfatizó el hecho de que se trató de una misma víctima y que las fechas indicadas en dos (2) de los cargos no pudieron ser precisadas. Sin embargo, en su análisis omitió evaluar si de la prueba se desprendía la unidad de intención o resolución en el imputado.

En cuanto a los hechos ocurridos el 26 de abril de 1994, la víctima declaró que ese día

> ... el sospechoso salió del baño en toalla y fue al cuarto de ella. Le dice te voy a molestar y le empezó a hacer cosquilla. Le agarra las nalgas, le sube la falda, le baja los "panties" y le metió la lengua en la oreja. La acostó en la cama se le trepó encima. Se sacó el pene y se empezó a mover encima de ella. Tenía el pene sobre su parte genital. Luego se bajó, le dijo ya no te voy a molestar más. Después la lleva al cuarto de él y la arrodilla en la cama con la falda abajo y él se arrodilla y pega

---

(4) Debemos destacar que a pesar de estos distintos esquemas, parece existir un consenso en la doctrina en que las normas sobre continuidad no les son aplicables a cierto tipo de delito por razón de la naturaleza de los bienes lesionados. Este es el caso de actividad delictiva que lesiona bienes de carácter personalísimo. Véase Puig Peña, *op. cit.*, pág. 303.

su pene a la vulva de ella y se movía. Apéndice XVI del Recurso de *certiorari*, pág. 83.

En cuanto al acto cometido entre julio y septiembre de 1993, la exposición estipulada de la prueba oral señala que "el acusado la ponía [a la víctima] a darle masajes a él de manera que ella quedaba encima de él arrodillada para que su vulva quedara encima de su pene. Luego él se sentaba encima de ella en la misma forma". Apéndice XVI, pág. 84. Similares hechos ocurrieron entre octubre y diciembre.

Esta prueba no revela que existiera unidad de intención en el imputado en la realización de los diversos actos por los cuales fue procesado. Por el contrario, aunque se trata de la misma víctima, las distintas formas en que ocurrieron los hechos sugieren que se trata de impulsos sucesivos independientes, excluyentes de la aplicación de las normas sobre continuidad. Dicho de otro modo, se trata de hechos distintos cometidos en períodos de tiempo sucesivos lo suficientemente concretos que permiten imputarle a Cortés Rivera la comisión de delitos distintos. *Procede, por lo tanto, revocar la sentencia del Tribunal de Circuito de Apelaciones y reinstalar la emitida por el tribunal de instancia.*

*Se emitirá la correspondiente sentencia revocatoria.*

EL JUEZ ASOCIADO SEÑOR FUSTER BERLINGERI concurrió sin opinión escrita.